THE FRED W. ALBRECHT GROCERY CO. *v.* OVERFIELD.

(Decided May 3, 1929.)

*Messrs. Musser, Kimber & Huffman,* for plaintiff in error.

*Messrs. Roetzel, Hunsicker & Olds,* for defendant in error.

PARDEE, J. The defendant in error, Mary Overfield, recovered a verdict and judgment in her favor against the plaintiff in error, the Albrecht Grocery Company, in the court of common pleas of Summit county; her cause of action being grounded upon the alleged negligence of one of the drivers of the plaintiff in error in the operation of one of its trucks in an easterly direction upon West Cedar street in the city of Akron, as she was operating her Ford sedan northerly upon Bishop street and across West Cedar street, when, as she claimed and the jury found, she was injured by the negligence of said driver in driving into her car.

The plaintiff in error in its brief says:

"In 1924 the city of Akron, under the direction of its director of public safety, established safety stops, so-called, on either side of Bishop street where it crosses Cedar street, as hereinbefore described, and caused stop signs to be erected on either side of Bishop street as warning signs to drivers using such streets that traffic upon and over Cedar street at such intersection would have the right to proceed in preference to traffic upon and over Bishop street.

"Such warning signs for traffic were placed on the right along the curb from ten to fifteen feet from the corner and at either side of Bishop street as one approaches the intersection on Bishop street.

"The principal error of which we complain is and was the denial of the right of the defendant to show the presence of such warning signs to the parties then using the street, and the right of the defendant below to show the presence of such signs as a traffic

regulation and caution for drivers of cars about to use and pass over the intersection of these streets.

"It was the contention of opposing counsel and adhered to strictly by the trial court, that the presence of such signs and warnings could not be shown for any purpose, even though the parties in question knew of their presence and meaning, and that the defendant below at least had continuously relied upon the same. * * *

"We offered to show certain sections of the ordinances of the city of Akron with reference to traffic regulations under police authority of the city and these ordinances were refused, the court contending that inasmuch as the warning signs at the intersection of these streets were not placed at least one hundred feet from the intersection, their presence could not be shown for any purpose in determining the rights of the parties in this controversy, and in this respect we believe the court erred."

The bill of exceptions does not support the aforesaid claim that the evidence was excluded because the signs were not placed at least 100 feet from the intersections, but shows that it was excluded solely for the reason that the city had not passed an ordinance or resolution as provided in Section 6310-32, General Code, *infra.*

The ordinances of the city of Akron offered by the plaintiff in error and excluded by the trial court were the following, to wit:

"Section 154. The operator, driver or person in charge of any car, dray, wagon, coach, omnibus, automobile, motorcycle, carriage, or other vehicle used, propelled or driven upon any street, alley or public

place of the city of Akron, shall conform to and observe the following rules of the road: &ast; &ast; &ast;

"Section 154-14. The driver of any vehicle shall stop the same upon signal from a police officer so to do and shall obey all signs and orders of such police officers. At times and in places where the traffic on the streets may become congested, and upon occasions of parades, processions, public assemblages of any kind or nature, where any number of vehicles are assembled and cause congested traffic conditions, the police of the city of Akron may make temporary rules regulating the traffic, and any person who, after being informed and warned of said regulations by a police officer of the city of Akron, refuses to obey such temporary regulations, or orders of any police officer given in pursuance thereto, shall be liable to the penalty provided in Section 155 hereof."

"Section 155. Any person violating any provision of Section 154-1 to 154-50, inclusive, shall be fined in any sum not to exceed $50 and the cost of prosecution."

The lawmaking body of this state has defined "right of way" in Section 6310-28, General Code, as follows:

" 'Right of way' means the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path."

Section 6310-28a, General Code, provides when the right of way shall be yielded, as follows:

"Excepting where otherwise hereinafter provided the operator of a vehicle shall yield the right of way

at the intersection of its path and the path of another vehicle to the vehicle approaching from the right.''

Section 6310-30 thus defines a main thoroughfare:

''For the purpose of enforcing the road regulations referred to in this chapter, the main thoroughfare shall be understood to mean all sections of public roads and highways on which street cars or electric cars run and also all main market and inter-county highways within the state.''

And Section 6310-31, General Code, reads as follows:

''Vehicles and street cars going on main thoroughfares shall have the right of way over those going on intersecting thoroughfares.''

And then by Section 6310-32, General Code, the city of Akron was expressly given the right to designate main thoroughfares in addition to those established by Section 6310-30; said Section 6310-32 being as follows:

''Local authorities shall have the right to designate by ordinance or resolution additional main thoroughfares and to designate what vehicles shall have the right of way at intersections of main thoroughfares; provided, however, that legible and appropriate signs be erected not nearer than 100 feet from the intersection along all road [roads] and highways intersecting such main thoroughfares.''

We recognize that this section is merely declaratory of the rights granted municipalities by the people of this state, so long as the local ordinances or resolutions are not in conflict with general laws. Section 3, Article XVIII, Ohio Constitution.

From these sections it is apparent that the council

of the city of Akron had authority to establish Cedar street, in the city of Akron, where the accident occurred, as a main thoroughfare, and to make what are sometimes designated as "boulevard stops," and to have erected there, at the proper places, legible and appropriate signs informing the public of that fact.

In the instant case it is apparent that the council of the city of Akron had not, at the time of the accident, established Cedar street as a main thoroughfare; at least no claim is so made, and no ordinance was offered by the plaintiff in error to establish that fact. Therefore the ordinances attempted to be placed before the jury by the plaintiff in error, and the evidence proffered, by cross-examination and direct effort, tending to prove that some signs similar to those provided for in Section 6310-32, General Code, were erected by the Akron police department at said intersection, were properly excluded by the trial court. The officers of the police department were incompetent to limit or to take away from the defendant in error those affirmative rights given to her by the Legislature of this state as set forth in Section 6310-28a, *supra.*

The lawmaking power in Ohio is vested in legislative bodies and in a few appointive boards, but not yet in the police departments of her many cities. Those departments have enough to do to enforce the laws properly made, without having the added burden of increasing the number of laws to be enforced.

The council of the city of Akron not having passed the ordinance so authorized to be passed, it is quite immaterial whether the police department erected the signs claimed by the plaintiff in error to have

been erected, or whether these signs were erected near or far from said intersection. Signs so erected do not have any legal effect whatever, and no one is required to pay any attention to them.

For these reasons the trial court did not commit any error in this regard.

The next alleged error which the plaintiff in error claims to be prejudicial grows out of the following situation, and in this part of the opinion the parties will be referred to as they appeared in the trial court:

At the close of plaintiff's case, one of the attorneys for her argued the case to the jury, using a part of the time allotted to plaintiff's attorneys.

The attorney for the defendant then stated to the court, in the presence of the jury, that he did not desire to make an argument, after which the judge stated in open court that he had not finished the preparation of his charge and excused the jury from the courtroom. Thereupon, in the absence of the jury, the other attorney for the plaintiff asked to be permitted to make an argument to the jury, to be part of the opening argument of counsel for the plaintiff. This request was granted, over the objection and exception of the defendant. The said attorney then proceeded to make a further argument to the jury, the time required for which, in connection with that consumed by plaintiff's other attorney, being less than the time which had been allotted to plaintiff's side for argument. After the further argument was completed, the court gave the attorney for the defendant another opportunity to make an argument to the jury, which he declined to do, and thereupon the court charged the jury.

Section 11447, General Code, provides how a trial by jury shall proceed, and paragraph 6 thereof is as follows:

"6. The parties then may submit or argue the case to the jury. The party required first to produce his evidence shall have the opening and closing arguments. If several defendants, having separate defenses, appear by different counsel, the court shall arrange their relative order."

So, did the trial judge abuse his discretion in permitting the attorney for the plaintiff to make a further opening argument to the jury? We think he did not.

In this state it has been the universal practice to deny the plaintiff the right to make a further argument, under whatever name it may be called, in cases similar to this, but that does not necessarily establish a rule which has to be followed. In our opinion it was within the sound discretion of the trial court to determine the question.

Questions of this character, and others relating to the trial of a civil case in a court of record, have been before the courts for determination and decision, and all courts seem to hold that the proper decision rests in the sound discretion of the trial court, and, unless the record shows that the trial court has abused its discretion, no prejudicial error can be claimed.

The bill of exceptions shows that, after the second argument was made by the attorney for the plaintiff, the trial court gave the attorney for the defendant an opportunity to make an argument in reply to the arguments made by the attorneys for the plaintiff, which opportunity the attorney declined; and

the fact that he stated to the court, in the presence of the jury, in the first instance, that he did not desire to make an argument, could not have prejudiced him in the minds of the jury under the changed circumstances, if he had then made an argument to the jury upon the debatable questions of fact.

We do not find any prejudicial error in the record, and for that reason we affirm the judgment of the trial court.

*Judgment affirmed.*

FUNK, P. J., and WASHBURN, J., concur.