MERVIN C. ROBERTS, RESPONDENT, v. HOWARD WILSON, SR., APPELLANT.—33 S. W. (2d) 169.

Kansas City Court of Appeals. November 3, 1930.

*E. G. Robison, J. J. Robison* and *J. W. McKnight,* for appellant.

*Randolph & Randolph* for respondent.

ARNOLD, J.—In this action plaintiff seeks to recover for damages to his motor truck alleged to have been caused by negligence of

defendant in a collision between said truck and a touring car owned and driven by defendant.

The record discloses the collision occurred about 9:30 A. M. on March 4, 1928, at the junction of state highways numbered 4 and 33, in DeKalb county, Missouri. At the place of the collision state highway 33 runs north and south, the west half thereof being paved with a nine-foot concrete slab. Highway 4 intersects 33 at right angles, but, coming from the west, it turns into 33, and the two proceeding north are one and the same. Said highway known as No. 4 west of highway 33, proceeds east as a public highway, but so far as the record shows, it is not numbered east of 33. The record shows No. 33 to be much traveled, but No. 4, west of the intersection, is unimproved and not so much traveled. At the time of the collision and for sometime prior thereto, there was maintained a state highway "stop" sign on the south side of No. 4, facing west in plain sight of drivers approaching the intersection from that direction.

At the time in question, plaintiff was driving his 2-ton motor truck on highway 33, along the concrete slab on the west side thereof, approaching the intersection from the north at a speed of about 25 miles per hour, the truck carrying a load of hogs weighing about 200 pounds each. At the same time defendant was approaching the intersection from the west driving his Buick touring car, at a rate variously estimated as fifteen to twenty-five miles per hour. Two men were riding in the cab of the truck with the driver, one seated on the right and the other on the left of plaintiff who was driving. Highway 33 is shown to be sixty feet in width and highway No. 4, forty feet wide at the intersection. The corners at said intersection were rounded, the west road being cut back with a throat one hundred sixty-eight feet in width at each end and running back one hundred feet into highway No. 4. At the east side of the road there was a "cut back" of sixteen feet, thus leaving the intersection sixty feet wide, east and west, and forty feet north and south.

Plaintiff testified his truck arrived and was in the intersection before defendant's car entered therein. Defendant's testimony was the two machines entered the intersection at approximately the same time, so that this is a disputed question in the case. It is undisputed that plaintiff intended to continue on south on highway 33, and that defendant intended to proceed on east. Plaintiff's testimony shows an automobile approaching the intersection from the west cannot be seen for some distance by a driver coming from the north, because of an embankment on the west side of highway 33. Of course the same condition exists as to cars approaching on No. 4 from the west. The collision occurred at or near the center of the intersection. There is some testimony of

record that each driver, on seeing the other's car, began to swerve his car, plaintiff to the left and defendant to the right, in an attempt to avoid the collision, but without success. The two cars collided with great force, the result being that both were thrown to the southeast corner of the intersection and lodged against an embankment east of the highway, south of the intersection; both cars were badly damaged, the truck upside down and partly on top of the Buick which was on its side. Defendant was within his car, from which position he was extricated by plaintiff. Plaintiff testified:

"The first words he (defendant) said after the collision took place were, 'Help me out.' And I helped him out of there, pulled him out to the side door of his car, got him up out in the road, and he kind of brushed himself off, and looked up at me and he says, 'Well, Buddy,' he says, 'I seen you coming; I thought I had time to beat you across there, but I guess I didn't.' "

This testimony was not denied by defendant, so far as shown by the record. Plaintiff further testified he did not see defendant's car until an instant before the collision, in which time he swerved his truck to the left, and applied his brakes.

The testimony is somewhat conflicting as to just what portions of the two cars were struck in the collision. Plaintiff and some of his witnesses testified the right fender of the truck collided with the Buick at or near its left front wheel; while defendant testified the Buick was struck near its rear end, and still other witnesses testified that the impact of the truck was near or at the middle of the Buick. The testimony on this point is so indefinite it is impossible to record here a positive statement of the facts of the matter.

The suit was instituted in the circuit court of DeKalb county and by change of venue went to Gentry county where it was tried to the court and jury, resulting in a verdict for plaintiff on his petition in the sum of $1,000, and against defendant on his cross complaint. Motions for a new trial and in arrest of judgment were overruled and defendant has appealed. The petition alleges there was a highway stop sign on highway No. 4 west of the intersection, and that defendant negligently failed to exercise the highest degree of care in the operation of his motor car, and failed to exercise the highest degree of care to keep a vigilant lookout, in that he carelessly and negligently operated his motor car at a high and rapid rate of speed; that he failed to exercise the highest degree of care to stop his motor car before entering said intersection as indicated by the stop sign, and negligently and carelessly disregarded said stop sign; carelessly and negligently failed to yield the right of way to plaintiff, and carelessly and negligently drove and operated his motor vehicle at said time and place so as to cause same and

plaintiff's motor truck to come into violent collision, when he saw, or by the exercise of the highest degree of care on his part, should have seen plaintiff's truck was upon said highway, and at or near said intersection, and in a position of peril, and that defendant saw, or by the exercise of the highest degree of care should have seen plaintiff's truck in a position of peril, in time, by the exercise of the highest degree of care, to have stopped or turned aside, and thereby have avoided the collision; but that because of said carelessness and negligence in failing to stop or turn his motor vehicle aside, and because of the carelessness and negligence of defendant in operating his motor vehicle at a high and dangerous rate of speed, and in disregarding said stop sign, and carelessly and negligently failing to yield the right of way to plaintiff's truck, caused said truck to be turned over in a deep ditch, wrecking the same. These allegations of the petition are followed by a paragraph listing the items of damage to the truck. The petition charges five of the hogs being hauled were killed, and were of the value of $78.24. Judgment is asked in the sum of $2464.07.

Defendant interposed a demurrer upon the grounds (1) that the petition fails to state a cause of action upon the specific grounds of negligence alleged, and (2) because the petition while attempting to state a cause of action under the humanitarian rule, or last clear chance doctrine, does not state sufficient facts to constitute a cause of action against defendant on said grounds. The demurrer was overruled and defendant filed answer and cross-complaint which contains, first, a general denial and as affirmative defense pleads contributory negligence, in that (1) plaintiff at the time was driving his truck in a negligent manner and at a high and dangerous rate of speed, without proper regard for the rights of others upon the highway; (2) failure to give signal or warning of his approach; and (3) without yielding to defendant the right of way across the intersection; and (4) driving his truck in a southeasterly direction when approaching said intersection and while thereon, and (5) not slackening his speed, and (6) not having his truck under proper control; and (7) in running defendant down. The answer further alleges that defendant reached the intersection of the highways and was proceeding across the same, and that plaintiff saw, or by the exercise of the highest degree of care could have seen plaintiff driving onto and upon said intersection and in a position of peril in time, by the exercise of the highest degree of care, to have given warning of his approach, or stopped or turned aside; that plaintiff failed to do so, but drove into a collision with defendant's car.

The answer further pleads that plaintiff and defendant in their respective vehicles reached the intersection at approximately the same time and that plaintiff negligently refused to yield the right of way over the intersection "which said act of negligence on

plaintiff's part directly contributed to the damages of which plaintiff complains.'' For further answer and cross-petition defendant alleges plaintiff and defendant reached said intersection at approximately the same time; that defendant proceeded to drive upon and across the same with the intention of continuing on east; that plaintiff approached said intersection negligently and without the exercise of the highest degree of care, without giving warning of his approach, and driving at a high and dangerous rate of speed under the circumstances, and without yielding the right of way to defendant, or slackening the speed of his truck, or stopping the same; but when near said intersection, plaintiff turned the course of his truck in a southeasterly direction, and continued said direction on and into said intersection and upon and against defendant's automobile, wrecking the same, and injuring defendant to his damage. The answer also charges that by reason of the aforesaid negligence of plaintiff, defendant's automobile was damaged; that said automobile, at the time it was so damaged, was in good repair; that it had been driven about 8,000 miles; that it was a Buick 1922 model, six cylinder, five passenger, and of the reasonable value of $500; that it was completely wrecked by said collision, and thereafter was of the reasonable value of $24.

Further answering, defendant says that as a result of said collision his back was injured, wrenched and strained; that he suffered injuries to his leg, side, head and body; ribs were broken and he suffered extreme nervousness; was confined to his home and bed more than three weeks and still continues to suffer; that his hearing was impaired; that he expended money for medicine and doctor's fees; that he was damaged by reason of said personal injuries and medical attention in the sum of $2500; Judgment is asked on the cross-complaint in the sum of $2976.

The reply is a general denial, followed by a plea of contributory negligence.

We have carefully read the entire record and fully agree with defendant that ''there is not much controversy about most of the facts,'' as stated in his brief. The testimony produced at the trial has been referred to above and it will be unnecessary to repeat it. There are 21 assignments of error, all of which save those numbered 19 to 21 inclusive, are directed to alleged errors in instructions, the giving and refusal of some and the modification of others. It is first charged the court erred in refusing to give defendant's instructions A, B, C and D, all of which are in the nature of demurrers; A and B, at the close of plaintiff's case, and C and D, at the close of all the evidence. It is argued that, under the evidence, plaintiff going south and defendant east, both reached the intersection at approximately the same time; that the evidence shows no negligence on the part of defendant, as alleged in the

petition, in approaching said intersection, or in driving thereon or therein, for the reason that defendant had the right of way and the negligence of plaintiff in not yielding to defendant the right of way was the proximate cause of the collision; that the demurrers should have been sustained. Defendant bases his contention in this respect upon paragraph 1, section 21, Session Laws of 1921, Extra Session, p. 95, as follows:

"An operator or driver of a motor vehicle shall have the right of way over an operator or driver of another motor vehicle who is approaching from the left on an intersecting highway and shall give the right of way to an operator or driver of a motor vehicle approaching from the right on an intersecting highway. The right of way shall mean the right to proceed when two or more vehicles will reach such intersection at approximately the same time."

Defendant cites a number of opinions, based upon the section just quoted, which hold that where two cars arrive at an intersection at approximately the same time, the car coming from the right has the right of way. There can be no question but this is the rule, but there is testimony in plaintiff's behalf to the effect that plaintiff's truck arrived at the intersection before defendant's car did, thus making a question of fact for the jury to determine. In deciding this point the jury had a right to consider the rule that care and prudence demand that one who is about to drive into an intersection where there is traffic ordinarily heavy should exercise the highest degree of care before proceeding to cross. In such case it is the duty of such person to slow down and have his car under such control that he may stop before colliding with another vehicle in the intersection. [Egan v. Palmer. 221 Mo. App. 823, 293 S. W. 400; Mitchell v. Brown, 190 S. W. 354.] The testimony is that neither of the cars in question was stopped before attempting to cross the intersection. But for the jury's consideration in determining the fact of proximate cause, or primary negligence. there is plaintiff's evidence that his truck was on the crossing before defendant's car had started to enter the same. Plaintiff testified that immediately after the collision defendant remarked he saw the truck approaching from the north, but thought he had time to beat it across; and the stop sign on the south side of No. 4 highway west of the intersection at which defendant did not stop. It is true this sign is precautionary only, but failure to obey it is an element for consideration by the jury in determining the question of negligence.

It is further insisted that neither the north and south nor the east and west highway is a superior highway, and travelers on neither have the right of way. This may be conceded but such fact does not eliminate from the consideration of the jury the question of actionable negligence. We may not hold that defend-

ant had the right of way as a matter of law. We rule there was no error in the refusal of the court to give the instructions in the nature of demurrers.

It is urged the court erred in refusing to give defendant's instruction "E" because one ground of negligence alleged in the petition is "that defendant failed to keep a vigilant lookout for plaintiff's truck on said highway." It is urged plaintiff offered no testimony in support of this averment, and defendant testified he "first looked to the south" as he approached the intersection, saw no one and then looked to the north, at which time plaintiff's truck was 20 rods north of the intersection. It is charged it was error to refuse defendant's instruction "E" when there was no evidence to support the allegation. Instruction "E" sought to tell the jury there was no evidence in support of this allegation, and they could not base a verdict against defendant upon such alleged failure. [Citing Miller v. Wilson, 288 S. W. 997.] As we view instruction "E," it is tantamount to a peremptory instruction to find for defendant, and we find such an instruction would have been improper under the facts of record. Moreover plaintiff's instruction 3 covers this point and correctly declares the law. There is no statute, so far as we know, requiring one to observe the warning implied in the stop signal, yet defendant's failure to obey it was a matter for the consideration of the jury, in connection with the general negligence pleaded. [Egan v. Palmer; Mitchell v. Brown, supra.] It may well be noted that under section 17, p. 138, Extra Session Laws 1921, the state highway commission is authorized to erect warning signs at points on highways within its discretion; and section 14 of the act further defines the commission's rights and duties in this respect. It naturally follows that when such warning signs are placed, anyone who fails to observe and obey them is not acting in an ordinarily prudent manner, and may be found guilty of common law negligence by the jury. [Foulks v. Lehman, 17 S. W. (2d) 994.]

It is charged the court erred in refusing defendant's instruction "F" because of the alleged negligent acts of plaintiff pleaded in the answer and supported by the evidence. The chief vice of this instruction is that it is based upon defendant's theory that plaintiff's contributory negligence in failing to yield the right of way was the proximate cause of the collision. But this was a point at issue in the case and therefore was for the jury. There was no error in the refusal of this instruction. The point was covered, at least indirectly, in other instructions and there was no chance for the jury to be misled in this respect.

It is charged the court erred in refusing defendant's instructions G and L. Instruction "G" sought to tell the jury the stop sign did

not change the law of the road, and instruction "L" declared it was immaterial whether or not defendant stopped at the stop sign. The points attempted to be covered were fully covered by plaintiff's instruction 3, and in the instructions given on the court's own motion.

Defendant's instructions E to L inclusive, were properly refused by the court, because each of them contained one or more elements unsupported by any evidence. [McNairy v. Pub. Co., 274 S. W. 849; Volkart v. Groom, 9 S. W. (2d) 947; Fierce v. Shapleigh Hdw. Co., 14 S. W. (2d) 511.] Defendant asked a great many instructions. in fact, so many and so confusing the court was warranted in refusing them. [Dakan v. Mer. Co., 197 Mo. 238, 94 S. W. 944; McAllister v. Barnes, 35 Mo. App. 668.] All of defendant's objections to the trial court's rulings on the instructions are fully covered in what we have already said. At several places in his argument on his assignments of error, defendant disconnectedly attacks plaintiff's instruction No. 3. In the last of these objections, defendant insists this instruction is erroneous because by it the court required the jury to find there was a stop signal at the intersection, and that defendant carelessly and negligently failed to stop his automobile thereat before driving into the intersection, while plaintiff's truck was therein. Defendant's position is that the instruction tells the jury defendant was compelled to stop at the stop sign, and was guilty of negligence as a matter of law if he failed to do so.

A careful reading of the instruction shows that it submits to the jury only the question of common law negligence; that is, whether or not defendant was guilty of negligence in disregarding the stop sign, under the circumstances detailed in the evidence. In this connection it is further contended there was error in the instruction in that it mentioned the stop sign, thus giving undue prominence to that part of the evidence. We think the instruction not erroneous in this respect. It may not be successfully contended that an instruction is erroneous because it requires a finding that the defendant in an automobile case failed to sound his horn, or that he negligently swerved his car, or failed to signal with his hand. These are merely requirements for a finding of negligence. We rule against defendant on these points.

Finally, it is charged the court erred in modifying defendant's instruction S, and giving it together with the court's instruction T. In instruction S, defendant sought to have the court instruct the jury that they could render one of three forms of verdict, as follows: (1) Against plaintiff on his petition and for defendant on his counterclaim: (2) against plaintiff on his petition. and against defendant on his counterclaim, and (3) against defendant on his counterclaim and for the plaintiff on his petition. The court gave

all the forms of verdict asked by defendant and also instruction T, which is as follows:

"If your verdict be for the plaintiff on his petition and for the defendant on his counterclaim it may be in the following form:

"Mervin C. Roberts v. Howard Wilson, Sr.

"We the jury find for the plaintiff on his petition and we assess his damages at the sum of $———— and we also find for the defendant on his counterclaim and we assess his damages for personal injuries at the sum of $———— and for damages to his automobile at the sum of $————.

"————————————

"Foreman."

We need not pass upon the question as to whether the court should have given instruction T, for the verdict of the jury shows they did not follow this instruction; and, therefore, if there was error in fact, in the giving of instruction T, and the modification of defendant's instruction S, the error was harmless.

We find no reversible error of record and the judgment is accordingly affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.