No. 12,759.

Staley et al. *v.* Vaughn.

(17 P. [2d] 299)

Decided December 19, 1932.

Mr. John P. James, for plaintiffs in error.

Mr. George K. Thomas, Mr. Paul P. Prosser, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

In an automobile negligence suit in the Denver district court, Frank M. Vaughn recovered judgment in the sum of $694.75, covering damages to his automobile, against D. H. Staley and Frank Staley, who here seek a reversal, contending that section 1950 of the Municipal Code of 1927 authorizing the manager of safety to designate "through traffic" or "stop" streets is unconstitutional.

If the district court erred in holding said section constitutional, certain instructions concerning the general right of way rule, which were tendered by defendants, and refused by the court should have been given, otherwise not.

On the night of February 24, 1929, plaintiff's minor son, Franklin C. Vaughn, accompanied by three friends, was driving his father's car eastward on East 14th avenue approaching Franklin street. At that time East 14th avenue from Broadway to Colorado boulevard had been officially designated by the manager of safety as a through street and caused to be marked with "stop" signs at all street intersections including Franklin street pursuant to the authorization of said ordinance. Frank Staley, driving his father's car and approaching said intersection northward on Franklin street disregarded the "stop" sign, failed to stop his car and crashed into the Vaughn car, whose driver, believing that the Staley car would be brought to a stop before entering 14th avenue, was proceeding across the intersection. Plaintiffs in error contend that if the aforesaid section is unconstitutional, Vaughn's negligence in failing to yield the right of way to them was the proximate cause of the accident and therefore they are not liable.

Section 1950 provides: "Through traffic streets. The manager of safety may designate certain streets and boulevards, at the intersections thereof, to be through traffic streets, and such street intersections shall be so marked with such kind or style of markings as may be

determined by the manager of safety and excise, and the driver of every vehicle, on approaching the said street intersections where so marked, shall bring his vehicle to a full stop before entering or crossing upon said streets.''

Undoubtedly, under the charter of the City and County of Denver, the city council has the power to reasonably regulate vehicular traffic on Denver's public streets. It could, in the exercise of a reasonable discretion, have designated by ordinance certain through traffic or stop streets. *Ex Parte Wilchar,* 102 Tex. Cr. App. 549, 278 S. W. 850; *Taylor v. Robberts,* 84 Fla. 654, 94 So. 874. Instead of taking such action, it passed the ordinance in question delegating the power to so designate and regulate to the manager of safety who, under the charter is charged with the duty of exercising the police power. It is urged that this power cannot be delegated because legislative, and would result in unreasonable, arbitrary and capricious acts by the manager of safety.

The power to provide for the designation of through streets is legislative, the designation thereof is not legislative, but is merely an administrative action presumably based upon the exercise of reasonable discretion. *Sapero v. State Board,* 90 Colo. 568, 11 P. (2d) 555; *Taylor v. Robberts, supra.* In the latter case it is stated at page 658:

''It is contended, however, that vesting in 'the Chief of Police with the approval of the Mayor' the authority to regulate traffic at the Union Station and at any point within a radius of two blocks thereof, or at any other congested portion of the city, is an unlawful delegation of power to the Chief of Police. The power vested in the Chief of Police was an administrative and not a legislative power.

''The organization and government of municipalities, particularly with regard to the regulation and control of traffic on streets, necessarily contemplates a certain power and discretion being vested in the police officers

in carrying into effect the ordinances of the city, and if the rules and regulations adopted by the police under the authority vested in them by the ordinances, are within the express general purpose of the ordinance and tend to make them effective, they are not subject to the criticism that they are an unlawful delegation of authority.'' (Citing cases.)

We are also impressed with the force of the dissenting opinion of Mr. Justice St. Paul in the Shreveport case, infra, he says, page 120:

''I respectfully dissent. Designating the streets in which there shall be no parking of vehicles, etc., under penalties provided for by a general ordinance, is no more an exclusively legislative function than the locating of fire hydrants near which there shall be no parking under penalties similarly provided, or the laying out of lawn and flower beds not to be trampled on under like penalties, etc.

''It is certainly a legislative function to provide for the keeping of public streets free from congestion or for facilitating the extinguishment of conflagrations or beautifying public places, and to pronounce penalties against those who obstruct the legislative purpose; but the arrangement of location and details is a mere administrative function, just as it is a legislative function to provide for the regulation of congested traffic; but surely to the traffic officer may be left some discretion in directing the movement and location of vehicles, without specifying in the ordinance the number of minutes to be allowed for traffic going in this way and in that, and the precise spots in which they shall stop, stand, etc.

''Traffic regulation is becoming a matter of supreme importance in this age; and details need constant changing to keep up with the rapid growth of traffic. If these details must be written into the law, any attempt to regulate traffic may be given over at the start; for in the time it takes to pass an ordinance conditions may have already so changed as to make the ordinance no longer

practicable; and what was best yesterday may be all wrong today, and good again tomorrow.''

We are not unmindful that there are cases holding to the contrary, notably, *City of Shreveport v. Herndon,* 159 La. 113, 105 So. 244; *Cavanaugh v. Gerk,* 313 Mo. 375 (1926), 280 S. W. 51; *Lindenbaum v. Barbour,* 213 Cal. 277 (1931), 293 Pac. 829; *Albrecht Grocery v. Overfield,* 32 O. App. 512 (1929), 168 N. E. 386.

Of course any power conferred may be improperly exercised, but in this case it is neither charged nor shown that the designation of East 14th avenue was in any sense capricious, arbitrary or unreasonable.

The right to use reasonable discretion is an imperatively necessary incident to the exercise of the police power. The police department has reason to believe a street is about to cave in and stops traffic to avoid impending accident; it ropes a street off to protect citizens from damage from fire, fire equipment and trucks or exposed, faulty or fallen high powered electric wires; it posts traffic officers or traffic stop signs near schools to regulate traffic to protect school children in going and coming from school. Such examples may be multiplied, but these suffice to show that reasonable discretion should and must be used to effectively exercise the police power. New and different traffic problems are constantly arising. To require the enactment of a specific ordinance covering each such occasion would cripple efficiency and give postponed and inadequate protection.

In *Denver v. Forster,* 89 Colo. 246, 249, 1 P. (2d) 922, plaintiff sued the City and County of Denver to recover damages for having tripped over a street car safety zone metal button. These safety zone markers had been placed on the streets by the commissioner of safety under authority of the ordinance here questioned. We there held that in designating such safety zones, the City and County of Denver was acting in its governmental capacity and was therefore not liable. Although the constitutionality of this ordinance was not involved, the language

used is pertinent here. Therein we stated: " 'Modern traffic conditions in large cities are at best highly dangerous and difficult of regulation. Wide latitude, therefore, will be afforded the authorities in devising and establishing safety devices * * *. Where the advantages greatly outweigh the disadvantages, the exercise of the authority will be upheld.' [*District of Columbia v. Manning*, 57 App. D. C. 156, 18 F. (2d) 806, 53 A. L. R. 167.] So here, while an element of danger may be present in such markers, the city should not be handicapped in its efforts to safeguard the lives, persons and property of those who must be upon its streets."

Traffic congestion is an increasingly constant menace to the safety of everyone using our streets. Throughout the country it has become imperatively necessary to adopt new methods of traffic regulation. To meet these emergencies, for the protection of all, it is common knowledge that "stop" streets, similar to East 14th avenue, have been designated; traffic lights, signals, signs and safety zones have been installed. Such salutary measures have not only resulted in expediting traffic, but have greatly decreased the number of vehicular accidents.

No accident would have occurred in this case if plaintiffs in error had complied with the ordinance and brought their car to a stop before entering the intersection. The jury by its verdict found that there was no reasonable excuse for such failure. We can see no good reason for holding this ordinance unconstitutional, but, on the contrary, we believe that it is, and has been proven to be, wise, necessary and proper legislation affording greater protection and safety to the public.

Accordingly the judgment is affirmed.