**SAMS, Plaintiff-Appellee, v. LYONS, Defendant-Appellant.**

Ohio Appeals, Second District, Greene County.

No. 575. Decided December 28, 1956.

Pickrel, Schaeffer & Ebeling, H. Thomas Haacke, Jr., of Counsel, Dayton, for plaintiff-appellee.

Curtner, Brenton & O'Hara, James E. Seller, of Counsel, Dayton, for defendant-appellant.

## OPINION

By MILLER, PJ.

This is a law appeal from a judgment of the Common Pleas Court for Greene County, a jury having been waived and the cause tried to the court. The action was one for damages arising out of the collision between the two automobiles of the parties hereto, at the intersection of Skeel Avenue and Xenia Drive.

The record reveals that the plaintiff was proceeding in an easterly direction in a lawful manner on Skeel Avenue and as he approached the intersection with Xenia Drive the defendant was also approaching said intersection in a northerly direction on Xenia Drive at a slow rate of speed, to wit, approximately five or six miles per hour. The record also reveals that there was a stop sign on Xenia Drive facing the defendant as he approached the intersection, but there was a variance in the testimony as to the distance this sign was from the intersection. One wit-

ness testified that it was only three or four feet or a little farther from the same; other witnesses testified it was back 65 or 75 feet from the southern curb line, if extended, of Skeel Avenue.

One of the specifications of negligence set forth in the petition was that the defendant failed to reduce his speed or stop for said sign.

The defendant denied any acts of negligence on his part and further denied that there was a legally erected stop sign at the intersection, and also filed a cross-petition charging certain acts of negligence by the plaintiff. The alleged negligence of either of the parties depended solely upon whether or not the defendant had violated the requirements of the stop sign, the defendant having admitted that he observed the sign but did not bring his car to a stop.

The testimony disclosed that the two streets at the intersection are within the limits of Wright-Patterson Air Base and that the sign had been erected by the military authorities thereof. The court found in favor of the plaintiff, from which judgment this appeal is prosecuted.

Although the judgment entry does not reveal the specific act or acts of negligence the defendant committed, the decision of the court is filed with the transcript, which reveals that the court found the failure of the defendant to stop for the intersection was the proximate cause of the accident, and furthermore, this was the only fact upon which the judgment could have been grounded.

Counsel for the appellant urges that the sign was not erected in accordance with §4511.65 R. C.; hence the defendant was not required to bring his car to a stop before entering the intersection. This section of the Revised Code provides:

"* * * Every stop sign shall be located as near as practicable at the property line of the highway at the entrance to which the stop must be made, or at the nearest line of the crosswalk thereat, or, if none, at the nearest line of the roadway."

It appears to us that the sign was not erected in accordance with the cited section, but this cannot be the sole test of its effectiveness. The determinative question, as we see it, is whether or not it was so located as to reasonably lead the drivers on these streets to expect the person approaching the stop sign to stop and yield the right of way. If so, then it was incumbent upon the defendant to bring his car to a stop in obedience to the sign, and failure to do so constituted negligence.

In the case of **Stout v. Ellinger, 154 Oh St 418,** at **page 427** the court quotes with approval from Clinkscales v. Carver, 22 Cal. (2d), 72, 136 P. (2d), 777, which appears to be applicable to our factual situation, to wit:

" 'Failure to observe a stop sign is unreasonably dangerous conduct whether or not the driver is immune from criminal prosecution because of some irregularity in the erection of the stop sign. If a through artery has been posted with stop signs by the public authorities in the customary way and to all appearances by regular procedure, any reasonable man should know that the public naturally relies upon their observance. If a driver from a side street enters the ostensibly protected boulevard without stopping, in disregard of the posted safeguards, contrary to what

drivers thereon could reasonably have expected him to do, he is guilty of negligence regardless of any irregularity attending the authorization of the signs. * * * Otherwise a stop sign would become a trap for innocent persons who rely upon it.'

"It was well said in Comfort v. Penner, 166 Wash., 177, 6 P. (2d), 604:

" 'Travelers upon public highways are not expected to first ascertain and determine whether such signs are established in strict compliance with law before respecting them.' "

The appellant contends further that even though a stop sign was present there was a failure of proof that it had been authorized by statute or government regulation. Such a requirement does not appear to be necessary, for in paragraph 2 of the syllabus in the case of Stout v. Ellinger, supra, it is said:

"The operator of a motor vehicle, who fails to stop in obedience to a stop sign, erected and maintained by a municipal corporation at a street intersection, and thereby fails to yield the right of way to all other vehicles not obliged to stop, is guilty of negligence per se, although such sign was erected without specific authorization by ordinance of such municipal corporation. (Wolfe, Admr. v. Baskin, 137 Oh St 284, approved and followed.)"

In the cited case the court quoted with approval from Staley v. Vaughn, 92 Colo., 6, 17 P. (2d), 299, which held that the power to designate a street as a through street may be an administrative function, and which was exercised in our case by the establishment of the stop sign.

Also, in Wolfe v. Baskin, 137 Oh St 284, the court held that a legislative enactment was not a prerequisite to the erection of an effective stop sign, saying at page 290:

"The trial court entertained the view that there must be an ordinance authorizing in some form the installation or maintenance of the light at the particular intersection before a failure to stop could be asserted and relied on as a ground of negligence. With this view we are not in accord. Certainly the police authorities could station a police officer at any intersection to direct traffic without specific authorization by ordinance; and if a policeman is not available or it is thought best to substitute for him a mechanical device which signified 'stop,' certainly the police authorities would have power to do so. In our judgment a steadily burning red light, with or without the word 'stop' thereon, placed in the center of a street intersection by the police authorities would be a signal or sign 'of police officers' within the meaning of §6310.35 GC."

We therefore hold that a legislative enactment making Skeel Avenue a main thoroughfare was not required before the sign could become effective.

Several other errors have been assigned, all of which we have carefully examined and find none to be well taken.

Finding no error in the judgment the same will be affirmed.

HORNBECK and WISEMAN, JJ, concur.