HOMER C. MALCOM, ALVERTA MALCOM, and CANDACE MALCOM, a minor child, by her next friend, Alverta Malcom, Plaintiffs, v. LOUISE H. DEMPSEY, Defendant.

(*September* 7, 1962.)

STOREY, J., sitting.

*Julian D. Winslow* for the Plaintiffs.

*George L. Sands* and *Carl W. Mortenson* for the Defendant.

Superior Court for New Castle County, No. 139, Civil Action, 1959.

STOREY, J.:

This matter comes before the Court on defendant's motion to strike paragraph 7(e) from the complaint, on the ground that it fails to state a claim upon which relief can be granted, and that it is immaterial in this case. Defendant has filed a sufficient affidavit to support motion.

Paragraph 7(e) of the complaint states that the defendant was negligent in that:

"She failed to stop at the said intersection, the said intersection being marked with a stop sign in the direction in which defendant was traveling, thereby violating Title 21, Section 4143(a) of the *Delaware Code of* 1953."

QUESTION PRESENTED: If the defendant failed to stop at an intersection marked by a stop sign in the direction in which the defendant was traveling, was the defendant negligent *per se* if such stop sign was not placed at the intersection in accordance with the proper legal authorization?

Three possible rules exist in relation to an unauthorized stop sign at which the defendant in a negligence action allegedly failed to stop. First, since the stop sign did not have

proper legal sanction, its *de facto* existence is not a relevant fact on the issue of the defendant's negligence. Second, the stop sign is a circumstance that the jury can consider in determining whether or not the defendant was negligent. Third, violation of the stop sign by the defendant is negligence *per se* just as if the stop sign had been properly authorized.

The middle view would seem to have the best rationale of the three. It does not make too much sense to completely ignore a *de facto* warning sign which is identical to customary *de jure* warnings. Nor does it make sense to give a *de facto* warning the status of a *de jure* warning and state that the standard of conduct is fixed by law when such is not the case. It seems much better to let the *de facto* warning stand on its own merits and let the jury draw its own conclusions from the evidence and the application of the principles of common law negligence.

The better reasoned cases support the proposition that a jury question is presented. In *Tyson v. Shoemaker*, 208 Ga. 28, 65 S. E. 2d 163 (1951), the Supreme Court of Georgia said the following on the question of contributory negligence:

"The defendant sought to allege and prove the existence of a stop sign at the intersection of highway 38, and that it was put there in 1934 by the Street Superintendent of the City of Cairo on orders of the Chairman of the Street Committee of the Mayor and Council. Such allegations and proof, if made, would not establish the sign as one having been duly authorized by law, and the failure of the plaintiff to heed the sign would not constitute negligence *per se*. However, it was a question of fact for the determination of the jury whether the plaintiff exercised ordinary care for his own safety and the safety of others in failing to observe and obey the unofficial stop sign." 65 S. E. 2d 165.

The court held that it was error for the trial court to exclude evidence of the existence of an unofficial stop sign and the

plaintiff's failure to heed the sign since these facts "were relevant matters in a consideration of the diligence and negligence of the parties under the circumstances in this case, and such matters should have been submitted to the jury." 65 S. E. 2d 166.

The Supreme Court of New Hampshire also has reached the same conclusion. In *Legere v. Buinicky*, 93 N. H. 71, 35 A. 2d 508 (1943), the court said of an allegedly unauthorized stop sign:

"* * * Of course if the sign was not placed in accordance with statutory authority directly or under an ordinance, then it was a mere circumstance of the accident, entitled to such consideration as a warning and a suggestion for caution in operating a motor vehicle as a reasonable driver under the circumstances would give to it, but without legal requirement beyond its bearing as a detail of the situation upon due care of a driver passing northerly through Pearl Street and approaching Myrtle Street * * *". 35 A. 2d 509.

In *Rodenkirch v. Nemnich*, Mo. App., 168 S. W. 2d 977 (1943), the St. Louis Court of Appeals was ruling on an instruction which was open to two different constructions. At the time of the accident, Missouri had no statute requiring motorists to stop at stop signs. The trial court had granted the defendant's motion for a new trial and the plaintiff had appealed. The court described the contentions of the parties as follows:

"The respondent contends that the foregoing instruction is erroneous because it submitted to the jury the theory that a failure to observe the stop sign in question was negligence as a matter of law. If the instruction did so charge, it was clearly erroneous, for at the time of the occurrence in question there was no statute requiring persons operating motor vehicles at that point on Old Florissant Road to stop in obedience to said sign. The State Highway Department,

by erecting such signs at highway intersections, cannot create a standard of conduct for drivers of motor vehicles, violation of which the courts must declare to be negligence regardless of all other facts and circumstances.

"The appellant contends that by requiring a finding that defendant 'carelessly and negligently' disregarded said stop sign, the court left the issue of negligence to the jury." 168 S. W. 2d 979.

The appellate court upheld the decision granting the defendant a new trial saying that an instruction open to two constructions, one a correct rule of law and the other incorrect, is erroneous. Thus the court held there was no negligence *per se* when no statute imposed a duty on motorists to stop. The same conclusion would follow where there is a prohibitory statute but a particular stop sign was not erected in accordance with the statute. In neither case is the standard of care imposed by law. But in both cases, the existence of the stop sign and the failure to heed it, are relevant facts for the jury on the question of negligence. See also *Roberts v. Wilson*, 225 Mo. App. 932, 33 S. W. 2d 169, 172 (1930). *Watson v. Long*, Mo. App., 221 S. W. 2d 967 (1949).

One text on the law of torts has considered the question of whether violation of an unauthorized stop sign could be negligence *per se*. In discussing a case where a stop sign was posted under an ordinance invalid for faulty publication, the text said of the negligence *per se* rule the following:

"* * * And indeed there would seem to be a conceptual difficulty in the way of applying the negligence *per se* rule to such a case since it cannot be said that the party set his own judgment up against the community standard as crystallized in law, for some step has been omitted which was needed to consummate that crystallization * * *." Harper and James, *The Law of Torts*, Vol. 2, § 17.6, p. 1002, ftnt. 29.

Just as the better reasoned opinions reject the negligence *per se* rule in cases of violations of unauthorized stop signs, so do they reject the rule that such violations are irrelevant on the question of negligence. The Iowa Supreme Court in *Geisking v. Sheimo*, 252 Iowa 37, 105 N. W. 2d 599 (1960) relied on the following quotation from 164 A. L. R. 216 to support its conclusion that "An unauthorized sign is not meaningless when questions of negligence are under consideration."

"Furthermore, many courts take the view that even if it is shown that the traffic signal involved was not properly authorized, it is still effective to control the question of the negligence or contributory negligence of a pedestrian or vehicle driver who disregards it, at least to the extent that such disregard may be taken into consideration by the trier of the facts as one of the circumstances to be passed upon in determining the question of a violator's negligence or contributory negligence."

The court found that the question of negligence was one for the jury.

In *Sellman v. Haddock*, 66 N. M. 206, 345 P. 2d 416 (1959), a stop sign authorized by a city ordinance was placed on the left hand side of the street contrary to the regulation of the State Highway Commission which provided that a single stop sign would be placed on the right hand side of the road. The defendant-appellant admitted he did not stop at the stop sign but claimed the sign was wholly ineffective for any purpose and the ordinance authorizing it was a nullity. The trial court held that the ordinance was valid but evidently did not apply the negligence *per se* rule to its violation. The Supreme Court held that the stop sign was relevant regardless of the validity of the ordinance. The Court said:

"* * * [H]ere the stop sign had been erected and maintained by legally constituted authority and 'was at least a *de*

*facto* warning sign,' and the appellant in the exercise of due care was charged with the duty to obey it or run the risk of being found guilty of negligence. That is what occurred here, and although the trial court by his finding indicated his view that the ordinance was a valid one—as stated above, this being immaterial, we see no error in the predicating of liability upon appellant's failure to stop. * * *"

In other words, a stop sign without legal sanction is nevertheless a circumstance to be considered in a common law negligence action. See also 164 A. L. R. 216-219, and cases therein cited.

Certain cases do at first blush indicate a contrary conclusion to that of this opinion. For example, three Ohio cases indicate that violation of a stop sign erected by an appropriate police agency is negligence *per se* notwithstanding the lack of an authorizing statute or ordinance or administrative resolution. *Wolfe v. Baskin,* 137 Ohio St. 284, 28 N. E. 2d 629 (1940); *Stout v. Ellinger,* 154 Ohio St. 418, 96 N. E. 2d 249 (1951); *Sams v. Lyons,* Ohio App., 146 N. E. 2d 131 (1956). These cases, however, do not carry much weight under the Delaware law where the power is particularly given to the State Highway Commission which customarily acts by resolution. Therefore, the absence of such a resolution has a direct bearing on the legality of particular stop signs. It is felt that even Ohio would hesitate to adopt a negligence *per se* rule under these circumstances. See *Hoover v. Blackmore,* Ohio Mun., 87 N. E. 2d 477 (1949), a case which construes a statute giving regulatory power to the county commissioners and in which the court refuses to give the authority of law to a sign erected by the County Engineer. Compare an early Ohio case, *Fred W. Albrecht Grocery Co. v. Overfield,* 32 Ohio App. 512, 168 N. E. 386 (1929) where the court said unauthorized signs have "no legal effect whatsoever". This language was disapproved subsequently in *Cook v. Hunter,* 52 Ohio App. 354, 3 N. E. 2d 680 (1935). To the extent the

*Wolfe, Stout,* and *Sams* cases express a view contrary to this opinion, I choose not to follow them.

There is also language in two Texas cases which indicates a conclusion contrary to the conclusion expressed herein. In *Daniels v. Ramirez,* 209 S. W. 2d 972, 975 (1947), the court said:

"* * * Certainly a stop sign erected without authority or maintained without it could impose no duty. * * *"

Similar language appears in *Yellow Cab and Baggage Co. v. Mason,* Tex. Civ. App., 266 S. W. 2d 463 (1954). But in the former case the question before the court was whether negligence was established as a matter of law for the purposes of a directed verdict or a judgment n.o.v. Thus that case is not inconsistent with the position taken in this opinion. In the latter case which was reversed on appeal, *Mason v. Yellow Cab & Baggage Co.,* 153 Tex. 344, 269 S. W. 2d 329 (1954), the question presented concerned the submission to the jury of five special issues and their interrelation. The contention was that these special issues were put to the jury based on the erroneous assumption that the defendant had a duty to stop at a stop sign when it had not been shown that the sign was authorized. Neither case dealt directly with the question of whether or not an unauthorized stop sign is a circumstance to be considered by the jury.

Professors Harper and James have pointed out a California case which raises a related but distinguishable question from the one presented at bar. It is, however, so related that comment on it seems appropriate. In *Clinkscales v. Carver,* 22 Cal. 2d 72, 136 P. 2d 777 (1943), the ordinance which authorized a stop sign was invalid for faulty publication. The majority of the Supreme Court of California noted the question of negligence *per se* turned upon the irregularity of the authorization. Nonetheless, the majority held violation of the

stop sign was negligence as a matter of law. Justice Traynor wrote for the majority at 136 P. 2d 778-779:

"* * * Failure to observe a stop-sign is unreasonably dangerous conduct whether or not the driver is immune from criminal prosecution because of some irregularity in the erection of the stop-sign. If a through artery has been posted with stop-signs by the public authorities in the customary way and to all appearances by regular procedure, any reasonable man should know that the public naturally relies upon their observance. If a driver from a side street enters the ostensibly protected boulevard without stopping, in disregard of the posted safeguards, contrary to what drivers thereon could reasonably have expected him to do, he is guilty of negligence regardless of any irregularity attending the authorization of the signs. * * * Such irregularity does not relieve a person from the duty to exercise the care of a reasonable man under such circumstances. Otherwise a stop-sign would become a trap to innocent persons who rely upon it."

Harper and James correctly say of Justice Traynor's opinion:

"* * * Apparently this was not an application of the negligence *per se* rule but a decision that in this particular case no reasonable man would condone a deviation from the standard. * * *" *Harper and James, supra,* vol. 2, § 17.6, p. 1002, ftnt. 29.

There was a dissenting opinion in the *Clinkscales* case which was concurred in by a second justice. The dissent said that violation of a *de facto* stop sign by the defendant made the question of his negligence one for the jury.

While there is merit in the opinion of Justice Traynor, the dissenting opinion follows the view taken in the majority of the cases (although most of the cases do not address themselves to the fine distinctions drawn by Justice Traynor).

In order to follow Justice Traynor, it is necessary for this court by judicial decision to set the standard of conduct of a reasonable man. Dean Prosser has written that "the attempt to reduce negligence to inflexible rules of law has nearly always been unsuccessful". *Prosser on Torts*, 2nd ed., § 40, p. 195. The standard of conduct of a reasonable man is more appropriately judged "by a cross-section of the public." See *Robelen Piano Company v. Di Fonzo*, Super. C. Del. 1961, 169 A. 2d 240, 245. The possibility that reasonable men can draw different inferences from the same facts is entitled to great respect.

The existence of a *de facto* stop sign and the defendant's violation of it are facts to be submitted to the jury for its determination of the question of the defendant's negligence.

For the above reasons, the defendant's motion is granted to the extent that the following language shall be, and hereby is, stricken from paragraph 7(e) of the complaint, "thereby violating Title 21, Section 4143(a) of the *Delaware Code of 1953*", so that paragraph 7(e) of the complaint will now read, "She failed to stop at the said intersection, the said intersection being marked with a stop sign in the direction in which defendant was traveling."

On presentation. Order in conformity with this decision will be entered.