HOMER C. MALCOM, Plaintiff Below, Appellant, v. LOUISE H. DEMPSEY, Defendant Below, Appellee.

(*March* 26, 1965)

WOLCOTT, C. J., CAREY and HERRMANN, JJ., sitting.

*Julian D. Winslow,* for plaintiff below, appellant.

*George L. Sands,* for defendant below, appellee.

Supreme Court of the State of Delaware, No. 29, 1964.

HERRMANN, Justice:

This is an automobile negligence case in which the verdict and judgment were entered for the defendant after jury trial. The determinative question presented for decision upon this appeal is whether certain stop signs were properly authorized by State and local authorities so that the defendant's admitted failure to heed them constituted a statutory violation and negligence *per se*.

These are the pertinent facts:

The accident happened at an intersection constructed by the State Highway Department in 1955 at Main Street and Delaware Avenue in Newark. The intersection was an important part of a new road construction program involving the highway system through and around Newark. The program included the construction and reconstruction of Delaware Avenue and Delaware Avenue extended from South College Avenue to the easterly limits of Newark.

Part of the project was a traffic complex constructed at the subject intersection consisting of "spurs" for merging traffic as well as the usual right-angle juncture. The planning of the intersection, as well as of other parts of the project within Newark, was coordinated by the State Highway Department with the City of Newark and the Federal Bureau of Public Roads. The planning included not only the details of actual construction but also traffic studies and the formulation of a plan for traffic flow through Newark. Included in the traffic control plan were certain one-way streets, turning lanes, parking provisions and the assignment of right of way to certain segments of traffic and the denial thereof to other segments.

The traffic analysis and the plan for the flow of traffic through Newark, together with other details of the project, were reviewed, discussed and agreed upon by Department engineers, officials of Newark and representatives of the Bureau of Public Roads. Finally, to consummate the arrangements, the Department and the City entered into a written contract, dated December 16, 1954, setting forth the respective rights and obligations of the parties relative to the Newark

portion of the construction. Attached to the contract was an engineering sketch of the entire project to be constructed in accordance with "plans and specifications for Contract 1302 of the State Highway Department." The sketch included the intersection here involved. The Chairman and Chief Engineer of the State Highway Department and the Mayor and Secretary of the City of Newark executed the contract, all of which was authorized by resolutions duly adopted by the Department and the Council.

The project identified as Contract 1302 was thereafter authorized and constructed by the Department and was opened to traffic in December 1955. In the course of the construction, the Department installed certain traffic control devices at various parts of the intersection and its spurs. A total of 8 traffic signs were erected at the intersection, including signs marked "merging traffic," "one way," "yield," and "stop." The signs were designated by the Traffic and Planning Engineer of the Department, in the usual course of his duties, to implement the plan of traffic flow and traffic control contemplated by the contract and the sketch. The contract of December 16, 1954 and the sketch attached[1] were silent as to traffic signs. No resolution of the Department or the Council, adopted prior to the accident on April 9, 1958,[2] contained any specific reference to traffic signs for the project.

In accordance with the plans, Main Street was designated a one-way street going east and Delaware Avenue was designated one-way going north. Only the northern half of Main Street lies within the city limits of Newark, the city line being located along the center line of Main Street. The two stop signs in question governed traffic on Main Street approaching Delaware Avenue. The stop sign on the northerly

---

[1] It is assumed for present purposes that although the signs are identified in handwriting on the sketch in evidence, they did not appear thereon when the contract was authorized and executed.

[2] We note with concern that this appeal comes before this court in 1965 in a case commenced in 1959 complaining of wrongful acts which occurred in 1958. This status of the case is unexplained and can only be accounted for by a failure of the plaintiff to press his cause in the court below.

side of the street was in the City of Newark while the one on the southerly side of the street was outside the city limits.

All signs at the time of the accident were the same as when originally installed in 1955. The plaintiff was driving north on Delaware Avenue and the defendant east on Main Street. The collision occurred in the intersection.

The trial court ruled at a pre-trial stage that the stop signs were "unofficial" because they were not authorized by specific resolution of the State Highway Department or the City Council of Newark. The trial court concluded that the defendant's failure to heed the stop signs, or either of them, did not constitute a statutory violation and negligence *per se*. See *Malcolm v. Dempsey*, Del. Super., 184 A.2d 474 (1962). At the trial, after instructing the jury in the usual manner regarding violation of certain unrelated traffic statutes as being negligence *per se*, the trial court charged the jury as follows concerning the subject stop signs:

"The unofficial and unauthorized stop signs at the intersection where the accident occurred are a circumstance of the accident entitled to such consideration as a warning and a suggestion for caution in operating a motor vehicle as a reasonably prudent and careful driver, under like circumstances, would give it.

"If, from the evidence, you find that the defendant, Louise H. Dempsey, failed to stop at the stop signs, such failure may be taken into consideration by you as one of the circumstances to be considered in determining the negligence of the defendant, if you find any. In other words, the standard of conduct to be applied by you in this phase of the case is the standard of conduct a reasonably prudent and careful person would take under like circumstances."

Upon objections by both parties as to the instruction given in this connection, the trial court recalled the jury and restated at length the difference between common law negligence and negligence *per se*. The court repeated that the stop signs were not legally authorized and

that failure to obey them did not constitute a statutory violation and negligence *per se,* such failure being merely a "circumstance of the accident, entitled to such consideration as a warning and a suggestion for caution in operating a motor vehicle as a reasonably prudent and cautious driver under like circumstances would give it."

The jury's verdict for the defendant came after more than 5 hours of deliberation. A motion for new trial was denied; the plaintiff appeals.

We are of the opinion that the trial court erred in its conclusion that the stop signs were unauthorized. The error was clearly prejudicial, particularly in view of the emphasis given the matter in the trial court's supplemental instructions to the jury.

The pertinent statutes involved are 21 *Del. C.* Sec. 4143 and Sec. 505.[3] The key question is whether the stop signs were "erected by" the State Highway Department and the City of Newark within the meaning of Sec. 4143. We think that they were, under the facts and circumstances of this case, and that failure to heed such signs constituted violation of Sec. 4143 and negligence *per se,* the absence of a resolution specifically authorizing the placement of the signs notwithstanding.

---

[3]21 *Del. C.* Sec. 4143 provides:

"Sec. 4143. Stop signs

"(a)   Whenever a stop sign, notifying drivers to come to a full stop, has been erected by the proper State or local authorities as provided in this title, it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto.

"(b)   The operator of any vehicle who has come to a full stop as provided in subsection (a) of this section, shall not enter into, upon or across, such highway or street until such movement can be made in safety."

21 *Del. C.* Sec. 505 provides:

"Sec. 505. Erection of stop signs at designated highways

"The State Highway Department with reference to State highways, and local authorities with reference to highways under their jurisdiction, may designate main traveled or through highways by erecting at the entrances thereto from intersecting highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway. * * *."

The signs were unquestionably "erected by" the Department's Planning and Traffic Engineer. The question comes down to whether he was duly authorized to select and place the signs. We find that he was so authorized by virtue of the prior approval by the Department and City Council of the overall project and the traffic flow and traffic control contemplated by the plans, the contract and the sketch. The same resolutions which approved and authorized the construction of the intersection, as a component part of a thoroughfare having an agreed pattern of one-way streets and favored rights-of-way, must be deemed to have authorized the selection and erection of the particular traffic control devices necessary to implement the traffic flow contemplated by the plans.

It would not be reasonable to require the adoption of specific resolutions by the Department and the Council for each of the many and varied types of signals necessary to assure the traffic control contemplated by the plan. The administrative policy-making action of the Department [see *Young v. Julian* (D.Del., 1951) 97 F. Supp. 370, 376] and the legislative policy-making action of the Council were performed when, by their respective resolutions, the two governmental authorities approved the project and its traffic flow features. The "signing," necessary to implement those decisions, was a ministerial function properly delegated by the Department to its professional personnel, trained and qualified to design, select and place the particular traffic control devices best suited to effectuate the plan adopted by the governmental authorities.

We conclude, therefore, under the facts and circumstances of this case, that implicit in the resolutions authorizing the construction of the intersection was authorization to erect the stop signs here involved. There is no statutory requirement that, to be *de jure*, a traffic sign must be authorized by a specific resolution of the State Highway Department or local authority erecting it. In the absence of such statutory requirement, it is our conclusion that the stop signs here involved were legally "erected by" the State Highway Department and City of Newark.

We do not reach the other considerations, so ably discussed by the trial court in its pre-trial opinion (184 A.2d 474), based upon the unacceptable premise that the signs were unauthorized.

The defendant relies upon an unreported ruling in *State v. Wortz* (Superior Court of New Castle County, No. 678 Criminal Action 1960). In that case, in which violation of Sec. 4143 was charged as a criminal offense, the State Highway Department's Traffic Advisor for New Castle County testified that he alone decided upon the location and erection of certain stop signs including, perhaps, the one involved in that case. In the Wortz case, the trial court ruled that the stop sign there involved would be considered illegally erected in the absence of a showing of official action by the State Highway Department in the form of a resolution authorizing the sign. The trial court there concluded that an unauthorized traffic control imposed no statutory duty the breach of which would constitute a criminal offense.

The facts of the Wortz case are not before us and we do not pass upon the propriety of the rulings made there. Suffice it to say that the Wortz case was a criminal case which did not involve stop signs erected, as here, to implement a traffic flow and a traffic pattern specifically approved and authorized by resolutions of the State Highway Department and the local authority involved.

For the reasons stated, the judgment below must be reversed and the cause remanded for new trial. In view of this result, it is unnecessary to decide the several other grounds of appeal specified by the plaintiff.