Williams, J.
 

 Several questions are presented by the record and they will be discussed in order.
 

 The question that should be considered first is one made by the defendants. They maintain that the plaintiff cannot be prejudiced by any error in the record for the reason that the evidence, in any event, warrants a judgment in favor of the defendants as a matter of law.
 

 The plaintiff in his petition alleged that the defendants were negligent as to speed, keeping lookout ahead,
 
 *287
 
 guiding the automobile and keeping it under control, and in failing to sound the horn, and to stop in obedience to the traffic light.
 

 What was the evidence bearing on the issues of negligence, proximate cause and contributory negligence?
 

 On the evening of October 31,1936, which was somewhat rainy, the decedent alighted from a bus southbound on East 130th street, as it stopped to let off passengers at the northwest corner of East 130th street and Abell avenue. Abell avenue crosses East 130th street at right angles, but the intersection is not regular. If the south curb line of Abell avenue west of East 130th street is extended to the east, such extended line would be only about six feet south of the north curb line of Abell avenue east of East 130tb street. There was a red traffic light in the center of the intersection, suspended above the pavement, about midway between the southwest and northeast corners. This light burned steadily and, according to some of the evidence, had the word “stop” on the glass on its four sides at the time of the accident. It was stipulated by counsel in the record that installation of the light was made “by the city of Cleveland, by the police department.”
 

 As the decedent alighted from the bus, she proceeded to cross to the east side of East 130th street and when she had reached a point somewhat past the center of the street she was struck by the automobile which was owned by the defendant, Mary Baskin, and driven by her husband, Ben Baskin, both of them being seated in the front seat.
 

 There is a dispute in the evidence as to the exact point at which the decedent passed to the rear of the bus and crossed the street. One witness testified that the rear door when decedent got out was near the bus stop sign, which, according to the map, was located on the side of 130th street about five feet from the
 
 *288
 
 north side of the sidewalk running east and west on the north side of Abell avenue. There is also a dispute as to whether decedent was running or walking as she crossed the street, and as to whether she crossed straight or diagonally.
 

 At this point East 130th street is 26 feet in width and has a brick pavement. There are no crosswalks constructed in or marked out on the pavement. Abell avenue is 30 feet in width. According to some of the evidence, decedent, when she was struck, was only 20 feet north of the traffic light. In this position she would be at or near the point where the north crosswalk on East 130th street would be if it ran from the sidewalk at the northwest comer of the intersection to the sidewalk at the northeast comer. There is, however, much conflict in the evidence as to where the decedent was with reference to the north crosswalk location when struck.
 

 Defendants were approaching from the south, and there is a dispute in the evidence as to whether the automobile in which they were riding slowed down a little, slowed down to five miles an hour, stopped or practically stopped for the traffic light. The automobile struck the decedent with great force. The impact bent the headlight, broke the glass in it and deeply dented the left front fender, which was made of steel. There is evidence that the brakes screeched and that the automobile after striking decedent went on for a distance of 45 to 50 feet, turned nearly around in the street and carried her on the fender for some distance. The defendant, Ben Baskin, testified that the decedent, when he first saw her, was ten to fifteen feet from the bus and ten feet in front of the automobile and that at that time he was going between 20 and 25 miles an hour. According to the .testimony of Mary Baskin the horn of the automobile was not sounded.
 

 There is no evidence in the record as to whether the decedent looked both ways before she started to cross
 
 *289
 
 the street or whether she did or did not look while going across. There were only four witnesses as to circumstances occurring at the time of or immediately before the accident, none of whom testified as to looking by the decedent and, since the lips of the decedent were sealed in death, her version was not given.
 

 Under this state of the evidence the issues were properly submitted to the jury for determination. It is therefore necessary to inquire into the alleged error on which plaintiff relies.
 

 Plaintiff contends among other things that the trial court erred (1) in permitting the defendant, Ben Baskin, to testify that he was not placed under arrest while at the police station, (2) in withdrawing from the consideration of the jury plaintiff’s eighth specification of negligence, which reads: “In failing to
 

 stop said motor vehicle when approaching said intersection, in obedience to the police signal installed and maintained at said intersection,” and (3) in refusing special requests Nos. 5 and 6. These three assigned errors will be considered apart from others on account of the answers to interrogatories Nos.
 
 4
 
 and 5 which will be referred to later.
 

 It is a general rule that in a civil action the question of arrest is immaterial.
 
 Luby
 
 v.
 
 Hudson River Rd. Co.,
 
 17 N. Y., 131;
 
 Chicago City Ry. Co.
 
 v.
 
 Uhter,
 
 212 Ill., 174, 72 N. E., 195;
 
 Bray-Robinson Clothing Co.
 
 v.
 
 Higgins,
 
 210 Ky., 432, 276 S. W., 129. The same rule has been applied to non-arrest.
 
 Paul
 
 v.
 
 Drown,
 
 108 Vt., 458, 189 A., 144, 109 A. L. R., 1085. Of course there may be instances in which the fact of arrest might be so closely identified with the transaction as to be part of the
 
 res gestae
 
 and therefore admissible in evidence.
 
 Segerstown
 
 v.
 
 Lawrence,
 
 64. Wash., 245, 116 P., 876. Cf.
 
 Fitch
 
 v.
 
 Bemis,
 
 107 Vt., 165, 177 A., 193. The general rule applies here and the testimony as to non-arrest should have been excluded.
 

 
 *290
 
 As to the traffic light and the alleged failure of the driver of the automobile to stop, the court charged in substance that such a light could not be regarded as one which lawfully commanded the driver to stop his automobile at that point and withdrew from the jury the eighth specification of negligence quoted above. Section 6310-35, General Code, provides: “Pedestrians and drivers of vehicles shall obey and abide by all signals, signs, whistles and directions of police officers, and shall obey all automatic traffic signals.”
 

 The trial court entertained the view that there must be an ordinance authorizing in some form the installation or maintenance of the light at the particular intersection before a failure to stop could be asserted and relied on as a ground of negligence. With this viéw we are not in accord. Certainly the police authorities could station a police officer at any intersection to direct traffic without specific authorization by ordinance; and if a policeman is not available or it is thought best to substitute for him a mechanical device which signified “stop,” certainly the police authorities would have power to do so. In our judgment a steadily burning red light, with or without the word “stop” thereon, placed in the center of a street intersection by the police authorities would be a signal or sign “of police officers” within the meaning of Section 6310-35, General Code.
 

 In interpreting Section 6310-35, General Code, it is necessary to consider the lack of a legend signifying “stop” on a steadily burning red traffic light. Of course if the word “stop” was thereon it would be a command, disobedience of which would constitute negligence
 
 per
 
 Lse. By comparison it is well to inquire with respect to automatic traffic lights at a street intersection. Such lights flash alternately green and red, or green, amber and red as the case may be. Some years ago when such lights were first installed it was common to have the legends “ go, ” “ caution, ’ ’ and ‘ ‘ stop, ’ ’
 
 *291
 
 on the green, amber and red lights respectively. In recent years it has become quite common to use such automatic lights without any legends thereon. But it is a matter of common knowledge everywhere that green signifies go, amber caution and red stop. This knowledge is so universal that courts should take judicial notice of it and hold that to “crash a red light” which does not have the word “stop” on it, would constitute negligence
 
 per se.
 

 This court is constrained to take the same position with respect to a steadily burning red light placed by the police authorities at a street intersection in regulation of street traffic. Often the driver of the approaching vehicle cannot tell whether the light is automatic or a steadily burning light. In view of the well known and accepted practice it would be fatal to safety to lay down the rule that Section 6310-35, General Code, permitted the driver to go through a red light merely because it is not automatic in character and did not have a legend thereon.
 

 The trial court, therefore, should have charged the jury that a failure of defendants to stop at the intersection in obedience to the stationary red light would constitute negligence
 
 per se.
 

 In view of the evidence that the decedent was near the intersection and, according to some of the evidence, within 20 feet of the light or about where a cross walk would be if there were one, the plaintiff was entitled to have the court charge on the eighth specification of negligence.
 

 ■Plaintiff’s special request No. 5 was practically in the language of Section 6310-35, General Code, insofar as it refers to drivers of vehicles, and reads: “Under the provisions of the Ohio statutes the driver of the defendants’ vehicle was required to obey and abide by all signals, signs, whistles and directions of police officers, and to obey all automatic traffic signals.”
 

 Plaintiff’s special request No. 6 reads: “In con
 
 *292
 
 sidering whether or not the speed of defendants’ car was greater than was reasonable and proper, you have a right to consider as one of the circumstances, the existence of the red light at the intersection of East 130th street and Abell avenue; and if you find further that the word ‘stop’ appeared on all sides of that red light you would also have the right to také that into account in determining whether or not defendants’ speed at and immediately before the accident was greater than was reasonable and proper.”
 

 It was not error for the court to refuse request No. 5. In giving instructions to the jury the employment of the language of a statute is not sufficient where the statute requires interpretation to make its meaning clear and applicable to the facts. Such interpretation is for the court — not the jury.
 
 Lamke
 
 v.
 
 Harty Bros. Trucking Co.,
 
 96 Conn., 505, 114 A., 533;
 
 Arkansas Shortleaf Lumber Co.
 
 v.
 
 Wilkinson,
 
 149 Ark., 270, 232 S. W., 8;
 
 Kansas City, Ft. S. & M. Ry. Co.
 
 v.
 
 Becker,
 
 63 Ark., 477, 39 S. W., 358;
 
 Lindsay
 
 v.
 
 Elkins,
 
 154 Wash., 588, 283 P., 447;
 
 Deming, Admr.,
 
 v.
 
 City of Chicago,
 
 321 Ill, 341, 151 N. E., 886; 1 Reid’s Branson Instructions to Juries, Section 101, pages 274, 275.
 

 In the instant case the steadily burning red light without the word “stop” on it would not be merely a warning of danger — an element bearing on ordinary care — but would express a command to which obedience would be required. Whether or not the word “stop” was on the glass of the light so as to be visible to an approaching driver of a motor vehicle, failure to stop would be a violation of Section 6310-35, General Code, and negligence
 
 per se
 
 as heretofore stated. The request to charge was too general and left to the jury the interpretation of the statute.
 

 Request No. 6 should have been given. Section 12603, General Code, forbids the operation of a motor vehicle on “highways at a speed greater or less than is reasonable or proper, having due regard to the
 
 *293
 
 traffic, surface and width of the road or highway and of any other conditions then existing.” The traffic light and'its nature were “conditions” for the consideration of the jury on the question of speed.
 

 No prejudice resulted to the plaintiff by admission of the testimony as to arrest or in withdrawing from the jury the eighth specification of negligence or in refusing plaintiff’s request No. 6, for the reason that two interrogatories were submitted to the jury and were answered, as follows:
 

 “4. Were the defendants negligent in any of the respects submitted to you for your consideration? Answer, Yes.
 

 “5. If your answer to question No. 4 is in the affirmative, was such negligence a direct cause of the injuries and death of Mrs. Wolfe? Answer, No.”
 

 In view of the fact that the jury found in favor of the plaintiff as to defendants’ negligence the plaintiff could not have been prejudiced by any rulings that related wholly to the question of defendants’ negligence. The finding of the jury being in his favor in that respect, he could not have expected or obtained more if the rulings of the court had been free from error. Due to the fact that the cause will have to be retried, however, we have fully discussed these questions.
 

 The plaintiff also claims that the court erred by refusing to give plaintiff’s request No. 7, which relates to contributory negligence and reads: “If you find by the greater weight of the evidence that at the time of this accident there was a red light at the intersection of Abell avenue and East 130th street, and that the word ‘stop’ appeared on all four sides of that light, you would have a right to consider that as one of the circumstances in considering whether or hot plaintiff’s decedent (Mrs. Wolfe) was exercising ordinary care for her own safety.
 

 “In other words, irrespective of how the red light
 
 *294
 
 came to be erected, tbe problem of whether Mrs. Wolfe exercised ordinary care for her own safety can only be determined by a consideration of all the circumstances; and one of them was the existence of such red light, and the further question of whether, under the same or similar circumstances, a person of ordinary care would have relied upon the defendants to stop or slow down before she crossed the street.”
 

 The existence of the light and its character were proper elements to be considered in determining the issue of contributory negligence and the request, which properly stated the rule, should have been given.
 

 Plaintiff also claims that the trial court did not sufficiently clarify the issue of contributory negligence. One of the portions of the charges to which plaintiff objected and excepted reads as follows:
 

 “There was also a statute then in force, as there is now, which provided that pedestrians shall not step into or upon a public road or highway without'looking in both directions to see what is approaching, so that the statute imposed upon her the positive duty before going into the street to look for traffic coming along that street, and, in addition, as I have already said, she had a continuing and general common-law duty to use ordinary care and her faculties at all times for her own safety and
 
 to use them when such use would be
 
 effective, so that if she went into the street behind a bus which obscured her view, it remained her duty, when she came out to the edge of the bus and had the opportunity there for the first time to see a part of the street which had been obscured by the bus, if you find it was so obscured, it was her duty there to look for traffic coming and to look for danger.” (Italics ours.)
 

 This charge is concerned with the duty of the decedent to use her faculties and to look for the approach of vehicles, and the effect of the failure so to.
 
 *295
 
 do as bearing upon the issue of contributory negligence.
 

 Section 6310-36, General Code, provides: “Pedestrians shall not step into or upon a public road or highway without looking in both directions to see what is approaching.”
 

 The statute, then, regulates the conduct of the pedestrian when he leaves the curb to cross a street, but for the rule of conduct thereafter we must look to the common law. The rights of pedestrians and drivers of motor vehicles are equal upon the highway, recognition being given to the difference in mode of locomotion. Drivers of motor vehicles have the difficulty of not being able to stop as quickly as pedestrians, but at the same time are more likely to inflict injury upon others than are persons on foot.
 

 It is generally held that a pedestrian lawfully crossing a street is not required as a matter of law to look continuously for approaching vehicles.
 
 Shafer
 
 v.
 
 Myers,
 
 215 Ala., 678, 112 So., 230;
 
 Gett
 
 v.
 
 Pacific Gas & Electric Co.,
 
 192 Cal., 621, 221 P., 376;
 
 Filson
 
 v.
 
 Balkins,
 
 206 Cal., 209, 273 P., 578;
 
 Williams
 
 v.
 
 Benson,
 
 87 Kan., 421, 124 P., 531;
 
 Weidner
 
 v.
 
 Otter,
 
 171 Ky., 167, 188 S. W., 335;
 
 Wilder
 
 v.
 
 Cadle,
 
 227 Ky., 486, 13 S. W. (2d), 497;
 
 Show
 
 v.
 
 Bolton,
 
 122 Me., 232, 119 A., 801;
 
 Gauthier
 
 v.
 
 Quick,
 
 250 Mass., 258, 145 N. E., 436;
 
 Pollock
 
 v.
 
 McCormick,
 
 169 Minn., 55, 210 N. W., 630;
 
 Brown v. Conser Laundry Co.
 
 (Mo.), 246 S. W., 166;
 
 Healy
 
 v.
 
 Shedaker,
 
 264 Pa., 512, 107 A., 842;
 
 Mooney
 
 v.
 
 Kinder,
 
 271 Pa., 485, 115 A., 826;
 
 Heindl
 
 v.
 
 Perritt,
 
 158 Va., 104, 163 S. E., 93;
 
 Redick
 
 v.
 
 Peterson,
 
 99 Wash., 368, 169 P., 804;
 
 Jurisch
 
 v.
 
 Puget Trans. Co.,
 
 144 Wash., 409, 258 P., 39;
 
 Moseley
 
 v.
 
 Mills,
 
 145 Wash., 253, 259 P., 715;
 
 Deputy
 
 v.
 
 Kimmell,
 
 73 W. Va., 595, 80 S. E., 919, 51 L. R. A. (N. S.), 989, Ann. Cas. 1916E, 656;
 
 Bitter, Admx.,
 
 v.
 
 Hicks,
 
 102 W. Va., 541, 135 S. E., 601, 50 A. L. R., 1505;
 
 Salsich
 
 v.
 
 Bunn,
 
 205 Wis., 524, 238 N. W., 394, 79 A. L. R., 1069.
 

 
 *296
 
 In
 
 Trentman
 
 v.
 
 Cox,
 
 118 Ohio St., 247, 252, 160 N. E., 715, the rule is thus stated: “As a matter of fact, the law does not say how often the pedestrian must look, or precisely how far, or when, or from where. If he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again.”
 

 Of course the pedestrian must exercise ordinary care in the use of his eyesight and other faculties while crossing the street. If ordinary care requires him to look, then a failure to look will constitute negligence; but whether a pedestrian uses ordinary care in looking, and in the use of his faculties- otherwise is ordinarily a question of fact for determination by the jury. But what is said applies only after the pedestrian has stepped into the street. On entering the street he must comply with Section 6310-36, General Code, which requires him to look in both directions and a failure to comply therewith would constitute negligence
 
 per se.
 

 The court’s charge to the effect that it was the decedent’s duty to use her faculties at all times for her own safety and to use them when such use would be effective went beyond the common-law rule and constituted error.
 

 The jury made no finding as to contributory negligence. As heretofore stated in answering interrogatories Nos. 4 and 5 they found that defendants were negligent but also found such negligence was not the proximate cause of decedent’s death. The answers to these interrogatories convey the implication that the conduct of the decedent was the direct cause, for there could be no other causal intervention. In view of these circumstances the prejudicial character of the instructions remains notwithstanding the answer to interrogatory No. 5.
 

 All questions have been examined and we find no other prejudicial error in the record.
 

 
 *297
 
 For prejudicial error in refusing plaintiff’s request No. 7 and in charging as stated on contributory negligence, the judgment of the Court of Appeals will he reversed and the cause remanded to the Court of Common Pleas for a new trial.
 

 Judgment reversed.
 

 Weygandt, C. J., Day, Zimmerman, Matthias and and Hart, JJ., concur.