Matthias, J.
 

 The legal questions presented to this court are summarized by counsel for the defendant as follows:
 

 “Does the safety director of a city have the authority to orally authorize the operation of motor coaches for carrying passengers for hire along a fixed and regular route, so as to constitute said route a through highway under Section 6307-63 (a) of the General Code of Ohio, in the absence of an ordinance duly adopted by the council of the municipality?
 

 “Is the operator of a vehicle about to enter an inter
 
 *422
 
 section where stop signs have been erected guilty of negligence per se upon his failure to stop his vehicle and yield the right of way, regardless of the authority for the erection of the stop signs?”
 

 Olaim of error by the trial court is predicated upon the following special instructions to the jury before argument given upon request of counsel for the plaintiff :
 

 ‘‘The law of Ohio requires the operator of a vehicle to stop in obedience to a stop sign at an intersection where a stop sign is erected. In this case, the undisputed evidence is that there was a stop sign erected on Forest Rose avenue south of Fair avenue, and the defendant, Mr. Ellinger, admits that he did not stop his vehicle in obedience to that stop sign. Therefore, I charge you that Mr. Ellinger was negligent as a matter of law.
 

 “I charge you that, under the undisputed evidence in this case, Fair avenue, at its intersection with Forest Rose avenue, was a through highway at the. time of the collision involved in this case. I further charge you that the law of Ohio requires the operator of a vehicle, intending to enter a through highway, to yield the right of way to all other vehicles on said ihrough highway. Therefore, if you find from the evidence in this case that Roy Stout was operating the Greyhound bus in a lawful manner on Fair avenue as he approached and entered the intersection of Forest Rose avenue and that the defendant failed to yield the right of way to the bus, then the defendant, Mr. Ellinger, was negligent as a matter of law.”
 

 Refusal to instruct the jury as to contributory negligence and refusal to give other special requests which were contradictory of the special charges above recited constitute other claimed errors.
 

 The evidence is undisputed that the defendant did not bring his automobile to a stop as required by the
 
 *423
 
 stop sign. Section 6307-42 (b), General Code, provides :
 

 “The operator of a vehicle, streetcar or trackless trolley shall stop in obedience to a stop sign at an intersection where a stop sign is erected and shall yield the right of way to all other vehicles, streetcars or trackless trolleys not so obliged to stop.”
 

 The defendant contends that it was error to charge that failure of the defendant to stop constituted negligence as a matter of law, for the reason that it was not shown that the stop sign had been erected pursuant to proper authority. However, the principal controversy involves the instruction to the jury that Fair avenue was a “through highway” under the provisions of Section 6307-63 (a), General Code. It must be noted that the action of the safety-service director of Lancaster was limited solely to the granting of permission to the bus company to operate its busses over Fair avenue between route 33 and Columbus street, and that if such action was within the authority of the safety-service director Fair avenue became a through highway by virtue of the provision of Section 6307-63 (a), General Code, which is as follows:
 

 “All state routes and all sections of streets and highways on which are operated streetcars, trackless trolleys and other electric cars, or motor coaches for carrying passengers for hire along a fixed or regular route under authority granted by the municipal corporation in which such route lies, are hereby designated as through highways provided that stop signs shall be erected at all intersections with such through highways by the state highway department as to highways under its jurisdiction and by local authorities as to highways under their jurisdiction * * *.”
 

 It is urged by counsel for the defendant that the words, “under authority granted by the municipal corporation,” require that as a prerequisite to the
 
 *424
 
 granting of such authority the legislative body of the city must by ordinance specifically designate such route. On the other hand, counsel for plaintiff argue that the designation of the route in question was a purely administrative matter since no license, franchise or fee was involved, and that the term, “municipal corporation,” as used in Section 6307-63 (a), General Code, does not necessarily contemplate action by council, but that the action, being of an executive character, may be performed by the safety-service director. The only authority the safety-service director undertook to exercise was to permit the use of a certain street as a route for busses. Since the office of director of public safety and the office of service director are combined in the city of Lancaster, it is obvious that the safety-service director exercised the powers ordinarily conferred upon both of these offices. It is conceded by both parties that the safety-service director of Lancaster did, and was authorized to, exercise the police powers ordinarily incumbent upon the head of the police department of the city.
 

 Section 6307-2, General Code, defines “local authorities” as “every county, municipal and other local board or body having authority to adopt local police regulations under the Constitution and laws of this state.” In contrast, it is to be noted that in Section 6307-63 (a), General Code, the term used is ‘ ‘ municipal corporation ’ ’ and further that the General Assembly did not use the words, “local, authorities,” which it had theretofore defined to include the city council. It must necessarily follow that the term, “municipal corporations,” as used in the Uniform Traffic Act (Sections 6307-1 to 6307-110, General Code), is a broader term than “local authorities” and includes officers of the municipal corporation in the proper exercise of their executive authority. Signifi
 
 *425
 
 cant is tlie fact that in Section 6307-63 (a) the broader term, “municipal corporations,” is used in connection with authority as to routing, whereas the term, “local authorities,” is used in connection with authority to erect stop signs.
 

 There is nothing in this case indicating that under the charter of the city of Lancaster or under the statutes of the state the safety-service director was without authority to grant such permission. It must be noted that such permission was not of itself the designation of a through street. The record discloses that these stop signs, erected by the city, had been maintained and presumably recognized as valid stop signs for at least 10 years. Authority to erect such signs and lights is specially conferred by Section 6307-63 (b), General Code, which provides as follows:
 

 “The department with reference to state highways, and local authorities with reference to other highways under their jurisdiction may designate additional through highways and shall erect stop signs on all streets and highways intersecting such through highways, or may designate any intersection as a stop intersection and shall erect like signs at one or more entrances to such intersection.”
 

 Although it is not shown that the stop sign at the south side of Fair avenue was erected pursuant t.o any ordinance of the city of Lancaster the effect of such stop signs erected and maintained at city street intersections, even if not specifically authorized by ordinance, has been heretofore considered by this court in the case of
 
 Wolfe, Admr.,
 
 v.
 
 Baskin,
 
 137 Ohio St., 284, 28 N. E. (2d), 629. In that case a pedestrian was killed at a street intersection by a defendant who without stopping ran through a steadily burning red traffic light installed by the police authorities in the city of Cleveland. The argument was made in that case
 
 *426
 
 that such light was installed without specific authorization by ordinance. This court held in the syllabus as follows:
 

 “A steadily burning red traffic light placed at a street intersection in a municipality by the police authorities thereof although without specific authorization by ordinance is a lawful signal or sign within the meaning of Section 6310-35, General Code.
 

 “A failure to stop in obedience to such a traffic light constitutes negligence per se whether the light has a visible legend thereon signifying ‘stop’ or no legend whatever.”
 

 That decision disposes effectively of any contention of counsel for the defendant that the stop sign in question in. this case may be disregarded.
 

 The action of the defendant in running through the slop sign into Fair avenue constituted negligence per se and the court’s instruction was proper.
 

 In considering the instruction relative to Fair avenue as a through street it must, be noted that the undisputed evidence is that the busses of the Valley Greyhound Lines, Inc., were in fact operating over this street and carrying passengers for hire under authority granted by the head of the police department of the city of Lancaster. The rule enunciated in
 
 Wolfe, Admr.,
 
 v.
 
 Baskin, supra,
 
 should apply to the facts in this case. This is true for several reasons. Under the provisions of Section 6307-63 (a), General Code, it would seem that the operation, under proper authority, of any passenger-carrying motor coach in local or through service over a designated route would serve to constitute the street over 'which it was operated a through street regardless of whether other passenger-carrying busses were operating without such authority. If the contention of counsel for the defendant should prevail then the operator of any motor vehicle operating on such street could not be secure in
 
 *427
 
 the right of preference accorded him by such stop sign, and, in this instance, if such bus operation had been authorized but without technical legal accuracy, the bus must stop and yield the right of way to automobiles entering the street from its right regardless of the stop sign.
 

 In our opinion under the evidence in this case the court was not in error in giving the requested charges. The ease of
 
 Staley
 
 v.
 
 Vaughn,
 
 92 Colo., 6, 17 P. (2d), 299 (decided December 19, 1932), is practically identical with this case in its fact, situation. The same argument as to the legality of the designation of a through street was made in that case. The court held that the power to designate a street as a through street was an administrative and not a legislative function. The following language is particularly pertinent :
 

 “Traffic congestion is an increasingly constant menace to the safety of everyone using our streets. Throughout the country it has become imperatively necessary to adopt new methods of traffic regulation. To meet these emergencies, for the protection of all, it is common knowledge that ‘stop’ streets, similar to East 14th avenue, have been designated; traffic lights, signals, signs and safety zones have been installed. Such salutary measures have not only resulted in expediting traffic, but have greatly decreased the number of vehicular accidents.”
 

 The following statement of the court in
 
 Clinkscales
 
 v.
 
 Carver,
 
 22 Cal. (2d), 72, 136 P. (2d), 777, is applicable here:
 

 “Failure to observe a stop sign is unreasonably dangerous conduct whether or not the driver is immune from criminal prosecution because of some irregularity in the erection of the stop sign. If a through artery has been posted with stop signs by the public authorities in the customary way and to all ap
 
 *428
 
 pearanees by regular procedure, any reasonable man should know that the public naturally relies upon their observance. If a driver from a side street enters the ostensibly protected boulevard without stopping, in disregard of the posted safeguards, contrary to what drivers thereon could reasonably have expected him to do, he is guilty of negligence regardless of any irregularity attending the authorization of the signs. * * * Otherwise a stop sign would become a trap for innocent persons who rely upon it.”
 

 It was well said in
 
 Comfort
 
 v.
 
 Penner,
 
 166 Wash., 177, 6 P. (2d), 604:
 

 “Travelers upon public highways are not expected to first ascertain and determine whether such signs are established in strict compliance with law before respecting them. ’ ’
 

 The grounds of the reversal of the judgment of the Court of Common Pleas by the Court of Appeals were not set forth in its journal entry, as required by Section 12223-21, General Code.
 

 Errors were urged upon the Court of Appeals by the defendant which that court did not pass upon for as shown by its opinion it reversed the judgment of the lower court for the reasons indicated herein without discussing other claimed errors. These additional assignments of error of the trial court are urged in this court to sustain the judgment of reversal by the Court of Appeals.
 

 Refusal to instruct the jury on the subject of contributory negligence, as requested, is urged as such error.
 

 This contention is based principally upon the fact that the plaintiff proceeded to and through the intersection notwithstanding he saw defendant’s automobile approaching the intersection. The evidence all shows that the bus was traveling at a very moderate rate of speed. Negligence of the plaintiff may not
 
 *429
 
 properly be based upon the theory that he should have assumed the defendant would not observe the stop sign.
 

 The jury was directed by the court to consider the special instructions given before argument together with the general instructions. Since we hold the special instructions were correct, the court did not commit prejudicial error warranting a reversal of the judgment when the court stated in substance that he would not reread the special instructions but urged the jury to read and study them and apply the law contained therein to the issues of fact in this ease.
 

 A reading of the entire charge discloses that a full and correct instruction on the subject of proximate cause was given the jury.
 

 Since we find no error in the trial of the ease prejudicial to the defendant, the judgment of the Court of Appeals is reversed and the judgment of the Court of Common Pleas is affirmed.
 

 Judgment reversed..
 

 Weygandt, C. J., Zimmerman, Stewart, Taft and Hart, JJ., concur.
 

 Middleton, J., not participating.