Taft, J.,
concurring. While I am in agreement with the judgment in the instant case, I am disturbed by the reasons given in support of that judgment. In the future, those reasons will undoubtedly be urged to support and will fully support conclusions which this court cannot reach. Then this court will either have to reject those reasons as unsound or do the equivalent of limiting their application to the facts of this particular case.
The majority opinion takes the position that main thoroughfares, which had been designated as such under former Section 6310-32, General Code, remain such as long as the stop signs are such as were required by that former section, even though they do not conform with the Uniform Traffic Act. In reaching that conclusion, the majority opinion states that it is reasonable to interpret Section 6307-6, General Code, as meaning “that no regulation or rule in conflict with the Uniform Traffic Act can be enacted and enforced *418 after the effective date of the section.” (Italics supplied.)
One difficulty with this position is that that section specifically provides that “no local authority shall enact or enforce” any such rule or regulation. (Italics supplied.) Another difficulty is that, in enacting the Uniform Traffic Act, the General Assembly expressly repealed former Section 6310-32, General Code, which the majority opinion necessarily recognizes as being still in force for certain purposes. See 119 Ohio Laws, 804.
The terrible consequences, which the majority opinion asserts would follow a decision contrary to that being rendered in the instant case, may indicate that the same reasons exist for not permitting a collateral attack on a stop sign as have been used by courts to justify preventing a collateral attack on the authority of a de facto officer. Cf. Stout v. Ellinger, 154 Ohio St., 418, 96 N. E. (2d), 249. However, those consequences can hardly justify this court in substituting, for the meaning which the General Assembly expressed by the words that it used, a different meaning, which this court thinks the General Assembly should have expressed.
It is not necessary, in order to sustain the judgment in the instant case, to determine whether the question, as to noncompliance of a legible and appropriate stop sign with the specific requirements of the Uniform Traffic Act, can be raised by a collateral as distinguished from a direct attack (as under Section 6307-16, General Code) on the legality of that sign.
Section 6307-6, General Code, recognizes that a local authority may enact or enforce rules or regulations in conflict with the provisions of the Uniform Traffic Act if “expressly authorized” in that act to do so. Such express authorization is set forth in Section 6307-7, General Code. Apparently, this latter section *419 was put into the Uniform Traffic Act in recognition of the provisions of Section 3 of Article XVIII of the Constitution authorizing municipalities “to adopt and enforce within their limits such local police * * * and other similar regulations, as are not in conflict with general laws.”
Section 6307-7, General Code, reads in part:
“ (a) The provisions of this act shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from—
* * *
“4. Designating particular highways as one-way highways and requiring that all vehicles, trackless trolleys and streetcars thereon be moved in one specific direction ;
“5. Regulating the speed of vehicles, streetcars and trackless trolleys in public parks;
‘ ‘ 6. Designating any highway as a through highway and requiring that' all vehicles, trackless trolleys and streetcars stop before entering or crossing the same or designating any intersection as a stop intersection and requiring all vehicles, trackless trolleys and streetcars to stop at one or more entrances to such intersection ;
‘ ‘ 7. Regulating or prohibiting vehicles and trackless trolleys from passing to the left of safety zones;
t i * # *
“9. Regulating the use of certain streets by vehicles, streetcars or trackless trolleys.
“(b) No ordinance or regulation enacted under subdivisions 4, 5, 6, 7, or 9 of this section shall be effective until signs giving notice of such local traffic regulations are posted upon or at the entrances to the highway or part thereof affected as may be most appropriate.”
The majority opinion states that the words “most appropriate” in paragraph (b) of that section are applicable to the location rather than to the design of *420 stop signs. However, the signs involved are those “giving notice of * * # local traffic regulations” enacted under subdivisions 4, 5, 6, 7, and 9 and not merely under subdivision 6. A reading of those subdivisions indicates that the words “most appropriate” in paragraph (b) would necessarily be applicable not only to the location but also to the design of the signs referred to.
The soundness of this conclusion is demonstrated by the provisions of Section 6307-11, General Code, which reads in part:
“Local authorities in their respective jurisdictions are hereby authorized to place and maintain such traffic-control devices upon highways under their jurisdictions as they may deem necessary to indicate and to carry out the provisions of this act or local traffic ordinances or to regulate, warn, or guide traffic * * *. Ail such traffic-control devices hereafter erected shall conform to the state manual and specifications.”
The words “traffic-control devices,” found in the foregoing section, are defined in Section 6307-2, General Code, so as to include stop signs.
Nothing in the Uniform Traffic Act indicates that the power of municipalities, specifically recognized in Sections 6307-7 and 6307-11, General Code, is to be limited except by the terms of those sections. It follows that, in designating a through highway, a municipality may proceed either under Section 6307-7 or under Section 6307-63, General Code. If it does proceed under Section 6307-7, General Code, then there is no requirement that the required stop signs be other than “as may be most appropriate” or than as required by Section 6307-11, General Code. Certainly this does not require-that a legible and appropriate stop sign, erected by a municipality before the enactment of the Uniform Traffic Act, must have letters not less than six inches in height.