**CITY OF HUBBARD, Appellee,**

v.

**LUCHANSKY, Appellant.**

[Cite as *Hubbard v. Luchansky* (1995), 102 Ohio App.3d 410.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 94-T-5067.

Decided April 10, 1995.

*Jeffrey Adler,* for appellee.

*John S. Luchansky, pro se.*

CHRISTLEY, Judge.

This is an accelerated calendar appeal, based upon a final judgment of the Girard Municipal Court. Appellant, John S. Luchansky, seeks the reversal of his conviction for failing to obey a traffic control device, in violation of Hubbard Codified Ordinance 313.01.

Although he has not properly designated them as assignments of error, appellant has raised two arguments for review by this court. Under his first argument, he submits that his conviction should be reversed because the trial court's judgment contains a factual error concerning the alleged location of the violation. Specifically, he maintains that the court erred in finding that the violation allegedly occurred at the intersection of Hager and "East" Liberty Streets because such an intersection does not exist in the city of Hubbard, Ohio.

As to this argument, this court would first note that the trial court's judgment indicates that the finding concerning the location of the violation was based upon the testimony of the officer who had issued the citation. Since the record before us does not contain a transcript of the trial before the trial court,[1] we are unable to review the substance of the officer's testimony. As a result, we

---

1. The record before this court does not contain a transcript of the proceedings before Mayor Sauline of the city of Hubbard. However, R.C. 1905.25 provides that an appeal from a mayor's court shall proceed as a trial *de novo.* Accordingly, it follows that the scope of our review is limited to the proceedings before the trial court.

are required to presume, for the sake of this analysis, that the trial court's finding as to the location of the violation was supported by the evidence. See *Ostrander v. Parker-Fallis* (1972), 29 Ohio St.2d 72, 58 O.O.2d 117, 278 N.E.2d 363.[2]

As part of his appellate brief, appellant has submitted an unverified copy of a map of the city of Hubbard. This map appears to show that Hager Street never intersects East Liberty Street within the boundaries of the city, but instead forms an intersection with West Liberty Street. Specifically, the map appears to indicate that the point of demarcation between East and West Liberty Street occurs when that street intersects State Route 616, and that Hager Street intersects Liberty Street only at a point west of the intersection of State Route 616 and Liberty Street.

Although he does not expressly state so in his brief, appellant apparently is requesting this court to take judicial notice of the fact that the intersection to which the trial court refers in its judgment does not exist. As a general proposition, an appellate court has the authority to take judicial notice of any fact of which the trial court could have taken notice. *State v. Thomas* (Jan. 8, 1993), Lake App. No. 92-L-020, unreported, at 8, fn. 2, 1993 WL 9719. This would include the location of streets within the trial court's jurisdiction. *Id.*

In applying the foregoing proposition, the courts of this state have consistently held that an appellate court can take judicial notice of a matter even if the trial court failed to do so, or if the issue has not been raised by the parties. See, *e.g.,* *Greenfield v. Davis* (June 28, 1991), Highland App. No. 761, unreported, 1991 WL 122844. However, this line of cases has dealt exclusively with the taking of notice of the municipal ordinance or regulation upon which the prosecution is based, *i.e.,* the taking of notice pertained to a question of law, as compared to a question of fact.

While there appears to be a dearth of authority on this issue in the state, courts in other jurisdictions have reached a different conclusion in relation to questions of fact. These courts have held that when a trial court fails to take judicial notice of a factual matter because a party did not raise the issue, an appellate court will not consider the fact in reviewing the appealed judgment. 5 American Jurisprudence 2d (1962) 184, Appeal and Error, Section 739.

---

2. As an aside, this court notes that even though the trial court expressly held that the violation occurred at the intersection of Hager and *East* Liberty Streets, the testimony cited by the court in its judgment entry could be interpreted as not supporting this conclusion. According to the judgment entry, the officer testified that the traffic signal device was "facing eastbound traffic on East Liberty Street." In making this statement, the officer may have merely been indicating that the signal was governing traffic which had just been coming from East Liberty toward the intersection of Hager and *West* Liberty Streets.

In finding the foregoing authority persuasive, this court emphasizes that the rule as to taking notice of factual matters is consistent with the fundamental appellate principle that a reviewing court cannot decide an appeal based upon factual matters which were not before the trial court. See *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus. In addition, the rule is likewise consistent with the appellate principle that a party will be deemed to have waived any error to which the party failed to object.

In the instant case, there is no indication in the record that appellant ever asked the trial court to take judicial notice of the location of the streets in question. Under these circumstances, there would be no reason for the court to doubt the veracity of the officer's testimony concerning the location of the alleged violation. As to this point, we note that in its judgment, the trial court stated that appellant had admitted driving through a red light, and had argued only that he should not be found guilty because the traffic signal device had not functioned properly.

In the absence of a transcript, this court must presume that appellant failed to ask the trial court to take judicial notice in relation to this issue. Accordingly, since appellant waived the right to contest the trial court's finding as to the location of the alleged violation, his first argument lacks merit.

Under his second argument, appellant essentially contends that his conviction was not supported by sufficient evidence because appellee, the city of Hubbard, failed to establish that the red light had been "burning" for several seconds before he allegedly drove through it. This argument is predicated upon the assertion that in order to establish his guilt under the charged offense, appellee was required to show that the traffic signal did not change from the yellow light to the red light at the exact moment he entered the intersection.

In support of his underlying assertion, appellant cites the decision of the Ohio Supreme Court in *Wolfe v. Baskin* (1940), 137 Ohio St. 284, 18 O.O. 45, 28 N.E.2d 629. In that decision, the court held that a jury instruction on the doctrine of negligence *per se* should have been given because some of the evidence presented at trial had tended to prove that the defendant had failed to obey a traffic signal which had consisted of a "steadily burning" red light. The court emphasized that even though the light in question had not contained a legend specifically stating that a driver was required to stop his vehicle prior to entering the intersection, the defendant still had been required to do so because it was common knowledge that a red light was an indicator to stop. *Id.* at 291, 18 O.O. at 48, 28 N.E.2d at 633.

In attempting to interpret the meaning of the reference to a "steadily burning" red light in *Wolfe,* appellant submits that the decision stands for the proposition that a driver of a motor vehicle is not required to stop for a red light until after the light has been on for a few moments. However, a review of the entire *Wolfe* opinion indicates that the court never addressed the issue of how long a red light must be on before the operator of a motor vehicle is required to comply. Taken in context, the court's reference to "steadily burning" was only meant to distinguish between different types of traffic signal devices.

. The statement of facts in *Wolfe* noted that the signal device in that case consisted solely of one red light which stayed on continuously. As part of its discussion, the *Wolfe* court compared this particular device to one which, like the signal device in the instant case, has a green light, an amber or yellow light, and a red light. Even though the court indicated that the red lights on both the single- and the multiple-light devices would have the same meaning, it never held that the red light on either device had to be on for a certain period of time before it must be obeyed by a driver.

Thus, the holding in *Wolfe* simply has no application to the facts of the instant case. Instead, the determination of whether appellant was guilty of running a red light is governed by the statutory definition governing signal devices.

R.C. 4511.13(B)(1) provides that when a traffic signal device contains multiple or different colored lights, a steady yellow light is meant to indicate to the driver of a motor vehicle that "the related green movement is being terminated or that a red indication will be exhibited immediately thereafter when vehicular traffic * * * shall not enter the intersection." Subsection (C)(1) of this statute then provides that a steady red light is meant to inform drivers that they "shall stop at a clearly marked stop line * * * before entering the intersection and shall remain standing until an indication to proceed is shown * * *."

Considered together, the foregoing provisions indicate that a steady yellow light is designed to warn a driver that his right to proceed through an intersection will soon be terminated, and that he will be prohibited from entering the intersection when a red light is exhibited. Stated differently, although the driver of a motor vehicle initially has the right-of-way if he enters an intersection when the yellow light is on, he loses the right-of-way if he does not enter the intersection before the red light comes on. See *Luzar v. Reamansnyder* (Mar. 9, 1990), Trumbull App. No. 88–T–4124, unreported, at 11, 1990 WL 26218.

Moreover, the wording of the above provisions supports the further conclusion that the loss of the right-of-way and the duty to stop begin instantaneously after the red light is exhibited. As to this point, this court again emphasizes that a yellow light is designed to warn a driver that his right to enter

or occupy the intersection will soon be terminated. If the obligation to stop did not begin until a few seconds after the red light came on, the purpose of the yellow light as a warning and buffer would not be served. Clearly, the function of a yellow light is to allow someone who has already entered the intersection to safely exit prior to the light turning red.

In its judgment entry, the trial court expressly found that appellant did not enter the intersection until after the red light on the signal device had come on.[3] Since City of Hubbard Codified Ordinance 313.01 prohibits a driver of a motor vehicle from disobeying a traffic signal device, the trial court's finding was sufficient to support appellant's conviction.

Although the argument is not raised as a separate argument before this court, appellant's brief does refer to a third argument which was discussed in the trial court's judgment entry. Under this argument, appellant had maintained that the yellow light on the signal device had not stayed on for a period sufficient to comply with the guidelines set forth in the Ohio Manual of Uniform Traffic Control Devices. Based upon this, he asserted that if the light had "burned" for the required period, he would have entered the intersection before the red light came on.

As to this point, this court notes that the trial court specifically found that the yellow light did stay on for a sufficient period which would have allowed appellant to stop his car before the intersection if he had been travelling at the legal rate of speed. Moreover, we further note that at least one appellate district in this state has held that the guidelines in the manual are only recommendations which a municipality is not required to follow. *Shaker Hts. v. Willacy* (Feb. 21, 1985), Cuyahoga App. No. 48702, unreported, 1985 WL 17385.

Since each of the arguments raised in appellant's brief are without merit, the judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and JOSEPH E. MAHONEY, J., concur.

---

**3.** Again, since the record before this court does not contain a transcript of the trial before the trial court, we cannot review the propriety of this finding.