Pearl REYNOLDS and Verda Reynolds,
Plaintiffs,

v.

CONSOLIDATED CABS, INC., a Corporation, John Perkins, and Frances Richardson, Defendants.

No. 23839.

Kansas City Court of Appeals.

Missouri.

Feb. 3, 1964.

Thomas J. Conway, Jr., Popham, Thompson, Popham, Trusty & Conway, Kansas City, for appellants.

Selden M. Jones, Jr., Robert A. Sniezek, Henry Fox, Jr., Sniezek & Jones, Kansas City, for respondents.

SPERRY, Commissioner.

Plaintiffs, Pearl Reynolds and Verda Reynolds, her husband, sued defendants in separate actions for damages growing out of injuries suffered by Pearl Reynolds in an automobile collision between a taxicab being operated by defendant Perkins and owned by defendant, Consolidated Cabs, Inc. The cases were consolidated for trial. There was a verdict and judgment for Pearl Reynolds in the sum of $5000.00 and for Verda Reynolds in the sum of $2000.00, against all defendants. Defendant Richardson has not appealed. This appeal is prosecuted by Consolidated Cabs, Inc., and defendant John Perkins.

The collision occurred on February 7th, 1960, at about 6:50 A.M., before the street lights were turned off. It occurred within the intersection, at 39th Street and Troost Avenue, in Kansas City, Missouri. Traffic proceeds east-west on 39th Street, and north-south on Troost Avenue. 39th Street has two lanes for westbound traffic and Troost Avenue has three lanes for southbound traffic. At the time the accident occurred both 39th Street and Troost Avenue were dry and the intersection level. Traffic at the intersection was controlled by electric signals at all corners. The legal rate of speed, on both streets, was 25 miles per hour. The two drivers were proceeding, at all times, within that speed.

We will state the evidence, as gleaned from the record, in the light most favorable to the position of plaintiff.

Mrs. Reynolds testified to the effect that, at some time prior to 7:00 A.M., she boarded the automobile of Mrs. Richardson to travel to her place of employment; that there was another lady passenger in the front seat and plaintiff sat in the back seat; that, as the car approached Troost Avenue on 39th Street, traveling west, she did not observe the lights, speed or traffic; that when the Richardson car was in the intersection she saw a car approaching; that it struck the Richardson car on its right side, near where plaintiff was sitting.

Mrs. Richardson testified by deposition to the effect that, as her car approached the intersection, entered it and proceeded westwardly across Troost, it was traveling at a speed of from 20 to 25 miles per hour; that, when the front of her car was entering Troost she saw a car (the taxicab) one fourth block north on Troost, traveling south; that there was no other car in sight on Troost; that the cab was traveling at a speed of 25 miles per hour; that the signal light governing traffic on 39th Street was green; that it had just turned green as she was entering Troost; that she was watching the light and did not again see the cab until the accident occurred; that the front of the cab struck her car on the right side; that the front of her car, at the time the collision occurred, was across the white line next to the west curb line of Troost, within one half of a car length from the west curb; that Mrs. Reynolds was a passenger in the rear seat of her car, and that Miss Marvin was a passenger in the front seat.

Officer Maxwell, of the Kansas City, Missouri, police accident squad, testified to the effect that he arrived at the scene of the collision at about 6:50 A.M., that the cab was headed west on 39th Street, at the southwest corner of the intersection, the rear extending two feet into Troost Avenue; that the Richardson car was from thirty to forty feet south of the curb line on 39th on Troost, headed southwest; that there were no skid marks in the rear of either vehicle; that the cab was damaged

on the front and left side; that the car was damaged on the right side; that the greatest amount of debris was located at a point from ten to twelve feet south of the north curb line of 39th Street, and thirty five feet west of the east curb line of Troost Avenue; that the car was from sixty to seventy feet south of the debris; that the cab was from thirty five to forty feet south of the debris; that an automobile traveling at a speed of 25 miles per hour would travel twenty seven and one half feet before the driver could get his foot on the brake, and then would skid from forty to fifty feet; that, at 20 miles per hour, it would travel twenty feet before the driver could apply the brakes, and could be stopped within from thirty five to forty five feet thereafter.

Defendant Perkins stated that he was, at the time the collision occurred, operating the taxicab for Consolidated Cabs, Inc., that he was proceeding south on Troost Avenue between 38th and 39th Streets, when he stopped in the middle of the block for a passenger on the west side of Troost Avenue; that he did not pick up the passenger and pulled away from the curb into the southbound lane next to the center line of Troost Avenue; that the traffic light at 39th Street was red on Troost Avenue when he stopped but turned "green to go" as he started to pull away from the curb, from fifty to one hundred feet from 39th Street; that there were no motor vehicles ahead or behind him traveling south on Troost Avenue; that he first saw the Richardson car when it was from fifteen to twenty feet east of Troost on 39th Street, proceeding westward; that the light was then red on 39th Street, and green on Troost Avenue; that the taxicab was, at that time, from fifteen to twenty feet north of the north curb line of 39th Street, traveling at a speed of from 20 to 25 miles per hour; that he saw there would be a collision because it was coming into the intersection; that he applied the brakes "normally."

Mr. Perkins' deposition was read into evidence and he stated therein that, when he was fifteen or twenty feet north on Troost proceeding at 20 to 25 miles per hour, he, for the first time, saw the Richardson car; that he knew there would be a collision; that (the Richardson car) "it had gotten into the intersection"; that he applied the brakes after his cab was in the intersection, and swerved to the right, striking the other car.

Mr. Obermaier, a short-hand reporter, stated that he recorded a statement by defendant Perkins, in question and answer form. He produced a typewritten transcript and stated that it was taken February 8th, 1960. Under questioning, he read excerpts therefrom, from which it appears that Perkins stated that he stopped at *38th and Troost* for a passenger; that the light at 39th Street turned green "just before I left 38th Street, just was changing"; that he didn't know how far north of 39th Street he was when he first saw the car; that it was "just like something flashed, it was just there".

Miss Marvin testified to the effect that she was a passenger in the front seat of the Richardson car; that just before entering the intersection, the traffic light facing her was green; that she watched the light for a time and then saw a cab coming south on Troost; that the Richardson car was traveling at a speed of 20 miles per hour and that the cab was traveling faster; that, when she was half way in the intersection, the cab hit the car.

All parties stipulated, in open court, that the court should not instruct the jury on the "highest degree of care".

Defendant presents but one question on this appeal, which is that plaintiff Pearl Reynolds' instruction two is erroneous. It is also contended that instruction four is erroneous. It will be unnecessary to discuss the latter instruction because it is Verda Reynolds' instruction and a duplicate of number two.

Instruction No. 2 essentially tells the jury that plaintiff is entitled to recover if they find that *plaintiff was riding as a passenger in the Richardson automobile while it was being driven westward on 39th Street at a time when defendant Perkins was operating a taxicab southward on Troost Avenue; that the two vehicles were approaching each other at right angles, collided, and plaintiff was injured; that the car in which plaintiff was riding had entered the intersection when defendant Perkins operated the taxicab then and there at a speed of 25 miles per hour when it was twenty feet north of the north curb line of the intersection; that Perkins operated the cab at a speed which was greater than would permit him to decrease speed or to stop as may have been necessary to avoid the collision; and, that such operation of the cab by Perkins was negligence.* The instruction further told the jury that under the hypothesized facts, if so found and believed, their verdict must be in plaintiff's favor even if they further found that Perkins entered the intersection on a green light.

■ The first criticism is to the effect that the jury was not required to find the degree of care which Perkins was required to exercise at the time and place of collision. The parties had stipulated that "highest degree of care" need not be defined. No degree of care, highest or ordinary, was stated, referred to or defined in any instruction. However, instruction No. 2 informed the jury that, if the jury found that Perkins operated the cab at a rate of speed which was greater than would permit him to decrease speed or to avoid the collision, and that such operation was negligence, then the jury should find for the plaintiff. In effect, the jury was instructed that such conduct in the operation of the cab could constitute negligence, if the jury found it to be negligence in this case. Ordinarily the word "negligence" need not be defined in the instructions in view of its common usage and well understood meaning. Silsby v. Hinchey (Mo.App.) 107 S.W. 2d 812, 818; Fantin v. L. W. Hays, Inc.

(Mo.App.) 242 S.W.2d 509–513. The instruction gave the jury a rule by which they were permitted to find negligence and, therefor, the degree of care required of him. Defendant could not have been prejudiced by the failure of the Court to specifically define the term or announce any further rule of care. The instruction permitted plaintiff to recover only if Perkins operated the cab at such a speed as to prevent his slowing or stopping to avoid the collision. Only if the jury so found, and also found that such conduct constituted negligence at the time and place mentioned, then the jury was told that it should find for plaintiff. It did not make *insurers* of plaintiff.

■ Defendants also criticize the last portion of the instruction. This criticism rests on the broad theory that it directed a verdict for plaintiff even though under circumstances that "made it impossible for Perkins to avoid the collision." It only permitted a verdict for plaintiff in the event that it was found that Perkins was operating the cab at a speed which was greater than would permit him to avoid the collision by decreasing speed or stopping. This is the precise negligence with which Perkins was charged. Defendants say that a verdict for plaintiff was thereby directed even though the Richardson car came into the intersection on a red light, which was in accordance with some of defendants testimony but contrary to that of plaintiff. However, the instruction, under a fair interpretation, permitted recovery only if defendant operated his cab at such a speed as would not permit him to avoid the collision, by slowing or stopping, under all of the circumstances shown. The plaintiff's theory and evidence was to the effect that the Richardson car entered the intersection on the green light and was nearly across it when it was violently struck on the right side by the front of the defendants' car. Such theory was supported by a portion of Perkins' testimony and some of the physical facts in evidence. But the defendants offered evidence tending to prove that its cab entered the inter-

section on the green light. In any event, defendants do not contend that they were not required to have the cab under control so as to slow or stop, if necessary, at the intersection. Wyatt v. Hughes (Mo.App.) 236 S.W.2d 371, 375.

■ In this case it is noted that the jury was, initially, required to find that plaintiff *had entered and was within the intersection* when defendant was twenty feet north thereof, proceeding at 25 miles per hour. In Roberts v. Wilson, 225 Mo.App. 932, 33 S.W.2d 169, 172, where there was evidence that plaintiff's car arrived at the intersection first, this court held that care and prudence demand that one who is about to drive into an intersection *where there is traffic* should exercise the highest degree of care and to slow down *and have his car under such control* that he may stop before colliding with another vehicle *in the intersection*.

In Sommer v. St. Louis Public Service Company (Mo.App.) 262 S.W.2d 335, 336, et. seq., the St. Louis court considered an instruction quite similar to the one here involved. The instruction required a finding that plaintiff's car had *entered the intersection, that defendant's bus had not yet reached the intersection*. The instruction was held to be good because the negligence relied on was defendant's failure to yield the right of way under the conditions existing, and the court said: "but in a situation such as this, where the *plaintiff's car was in the intersection*" of a busy thoroughfare *before defendant's bus entered the intersection*, plaintiff had a right to cross. The court distinguished that case from that of Stakelback v. Neff (Mo.App.) 13 S.W.2d 575 and Greenwood v. Bridgeways, Inc. (Mo.App.) 243 S.W.2d 111.

■ In Brooks v. Mock (Mo.) 330 S. W.2d 759, 765, plaintiff had entered the intersection, and was within it, when defendant's automobile arrived thereat. Plaintiff's instruction two, permitting recovery upon a finding that defendant was proceeding at a high and excessive rate of speed "under the circumstances shown in evidence", was approved. The court observed that the rule stated in the Stakelback case, 13 S.W.2d 575, 577, has no application to a case where the submission is on high and excessive speed, *"under the circumstances shown in evidence"*. That is the negligence here submitted, which *prevented defendant from being able to stop*; a rate of speed which resulted in his failure to have his automobile under control so that he could stop. That is the submitted negligence, according to the essential meaning of the language used in the instruction, which is the governing factor in construing the instruction. Litt v. Allen (Mo.App.) 313 S.W.2d 183, 187. Defendant was not given an absolute right to cross the intersection regardless of all other traffic even if, as he said at one time in evidence, the green light was facing him before and when he entered it. Witt v. Peterson (Mo.) 310 S.W.2d 857, 860. There was evidence to the effect that there was but little traffic on Troost as defendant approached the intersection; and plaintiff's evidence was to the effect that she was within the intersection when defendant was twenty feet north thereof. She had almost reached the west curb of Troost when the Richardson car was struck in the side. Perkins was duty bound to look and, to look is to see that which is clearly visible. Cooksey v. Ace Cab Co. (Mo.) 289 S.W.2d 40, 44–45. He was required to have his car under control and to take appropriate action to avoid a collision, under the facts hypothesized in the instruction and shown in evidence.

■ It is also urged that the instruction is erroneous because it permitted recovery if the jury should find that the speed of the cab was such that it could not be stopped in time to avoid the collision when all of the evidence " * * * established it would have been impossible for him (Perkins) to have done so". We agree that

such was the state of the evidence but the effect of such evidence was merely to establish the negligence of Perkins, as charged, by a preponderance of the evidence on that submitted ground.

The instruction is not artfully drawn and is not a model for future use, but it does not appear that error was committed affecting the merits of the case.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

All concur.