JOURNAL ENTRY AND OPINION
Defendant-appellant Andrea Moss, appearing pro se, appeals from her conviction for running a red light entered after a bench trial in South Euclid Municipal Court. Defendant contends the traffic light was yellow when she entered the intersection and she was entitled to proceed even if it turned red. We find merit to the appeal, vacate the conviction and discharge the defendant.
On May 22, 1998 at about 10:00 p.m., defendant was traveling eastbound on Monticello Road and approaching the Green Road intersection in South Euclid, Ohio. South Euclid Police Officer Ben Parisi testified that he was parked in a nearby parking lot at the intersection. He testified that he saw defendant enter the intersection on a red light. He stopped defendant and issued a citation in violation of South Euclid Cod. Ord. 313.01. At trial, defendant testified that she entered the intersection on a yellow light. In reaching its judgment, the trial court stated as follows:
 If you enter an intersection on a yellow light, even if I gave you the benefit of the doubt, the officer testified it was red when you entered the intersection. You testified it was yellow when you entered the intersection, and you testified it might have turned red while you were in the intersection.
 The law is you have to be able to clear an intersection on a yellow light. If it turns red while you are in the intersection, it's a violation. When a light turns yellow, it means stop, caution. It means this light is about to turn red. And if you enter it, it's like a throw of the dice. You are taking the gamble, and if you lose you are in a violation.
* * *
 I don't think we need to go any further here and take up your time or the Court's because you didn't clear the — at least even giving your testimony full benefit of the doubt — you did not clear the intersection on a yellow light.
 So, I find that the City has carried its burden of proof and the fine will be $25 and costs. Thank you. Court is in recess.
(Tr. at 14-15)
Following the conviction, the defendant obtained a stay of her sentence and this timely appeal ensued. The City has not filed an appellee's brief.
Defendant's sole assignment of error states as follows:
 I. DID THE TRIAL COURT ERR WHEN IT REQUIRED APPELLANT TO STOP AT AN INTERSECTION WHEN FACED WITH A YELLOW LIGHT AND WHEN IT FAILED TO ALLOW APPELLANT TO PRESENT A CLOSING ARGUMENT.
Based on the trial court's colloquy with the defendant, we presume that the trial court did not find that defendant ran a red light. Rather, the trial court accepted defendant's explanation that she entered the intersection on a yellow light. The trial court proceeded to state, "when a light turns yellow, it means stop, caution. It means this light is about to turn red. And if you enter it, it's like a throw of the dice. You are taking the gamble, and if you lose you are in a violation." (Tr. at 14-15).
South Euclid Cod. Ord. 313.01 "Obedience to Traffic Control Devices" which the defendant was cited for violating states:
 No pedestrian or driver of a vehicle shall disobey the instructions of any traffic control device placed in accordance with the provisions of this Traffic Code, unless at the time otherwise directed by a police officer.
 No provisions of this Traffic Code for which the signs are required shall be enforced against any alleged violator if at the time and place of the alleged violation an official sign is not in pro per position and sufficiently legible to be seen by an ordinarily observant person. Whenever a particular section of this Traffic Code does not state that signs are required, that section shall be effective even though no signs are erected or in place. (ORO 4511.12)
South Euclid Cod. Ord. 313.03, "Traffic Control Signal Terms and Lights," states as follows:
 Whenever traffic is controlled by traffic control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red and yellow shall be used except for special pedestrian signals carrying words or symbols. The lights shall indicated and apply to drivers of vehicles and to pedestrians as follows:
* * *
(b) Steady Yellow indication:
 (1) Vehicular traffic facing a steady circular yellow or yellow arrow signal is thereby warned that the related green movement is being terminated or that a red indication will be exhibited immediately thereafter when vehicular traffic shall not enter the intersection.
These provisions are almost identical to R.C. 4511.12 and4511.13. The language contained therein is clearly set forth and has been reviewed by other courts. In City of Hubbard v.Luchansky (1995), 102 Ohio App.3d 410, 415, the court held:
 R.C. 4511.13(B)(1) provides that when a traffic signal device contains multiple or different colored lights, a steady yellow light is meant to indicate to the driver of a motor vehicle that "the related green movement is being terminated or that a red indication will be exhibited immediately thereafter when vehicular traffic * * * shall not enter the intersection." Subsection (C)(1) of this statute then provides that a steady red light is meant to inform drivers that they "shall stop at a clearly marked stop line * * * before entering the intersection and shall remain standing until an indication to proceed is shown * * *."
 Considered together, the foregoing provisions indicate that a steady yellow light is designed to warn a driver that his right to proceed through an intersection will soon be terminated, and that he will be prohibited from entering the intersection when a red light is exhibited. Stated differently, although the driver of a motor vehicle initially has the right-of-way if he enters an intersection when the yellow light is on, he loses the right-of-way if he does not enter the intersection before the red light comes on. See Luzar v. Reamansnyder
(Mar. 9, 1990), Trumbull App. No. 88T-4124, unreported, at 11, 1990 WL 26218.
 Moreover, the working of the above provisions supports the further conclusion that the loss of the right-of-way and the duty to stop begin instantaneously after the red light is exhibited. As to this point, this court again emphasizes that a yellow light is designed to warn a driver that his right to enter or occupy the intersection will soon be terminated. If the obligation to stop did not begin until a few seconds after the red light came on, the purpose of the yellow light as a warning and buffer would not be served. Clearly, the function of a yellow light is to allow someone who has already entered the intersection to safely exit prior to the light turning red.
See, also, Case v. Carter (1956), 103 Ohio App. 11 ("motorist who enters a street intersection controlled by a traffic signal on a yellow light is lawfully within the intersection"); Prather v.The Phillis Wheatley Association (1963), 8 Ohio App.2d 91, 93
("When the light is yellow, he may proceed through the intersection but he must do so cautiously and with due regard for the safety of other persons lawfully within the intersection");Botello v. Chase (Jan. 24, 1997), Sandusky App. No. S-96-003, unreported at 3 ("A driver who then enters the intersection on a yellow light is in the intersection lawfully"); Village of Lisbonv. Merino (July 30, 1997), Columbiana App. No. 95 CO 67, unreported at 1 ("A motorist who enters a street intersection controlled by a traffic signal on a yellow light is lawfully within the intersection"); Clay v. Coffield (Dec. 29, 1995), Montgomery App. No. 15025, unreported at 5 ("Vehicular traffic facing a steady yellow signal is warned thereby that a red indicator will be exhibited immediately thereafter. R.C. 4511.13
(B)(1). A driver who then enters the intersection on the yellow light is in the intersection lawfully").
The court in Springfield v. Stovall (1963), 117 Ohio App. 203, citing to Case v. Carter, supra, found that a municipal ordinance that specifically prohibited a motor vehicle from entering an intersection on a yellow light was in conflict with R.C. 4511.13
and, therefore, invalid.
Based on the above authorities, we find that a judicial interpretation of the South Euclid Code regarding traffic laws that makes it unlawful to enter an intersection on a yellow light and exit on a red light, to be contrary to the clear language of those ordinances and in conflict with the law of this state. This Court agrees with the court in Springfield v. Stovall, supra at 206, that:
 If some municipalities were permitted to prohibit a motorist from entering an intersection on a yellow light following a green light, and others, conforming with the general law on the subject, permitted the same act, every motorist traveling throughout Ohio would necessarily have to approach such traffic signals with a menacing uncertainty and indecision. Id. at 205. By the same token, a motorist proceeding with immunity in one city would, by performing the same act under identical circumstances, be subject to criminal prosecution in another city. Surely, a motorist is entitled to some assurance that the "rules of the road" are the same regardless of where he travels.
Therefore, we find the trial court erred in holding that the defendant could not proceed through the intersection once she entered it on the yellow signal and the conviction cannot stand.
Given our disposition of the appeal, defendant's argument that she was given no opportunity for a closing argument is moot. Defendant's sole assignment of error is sustained.
Judgment reversed and vacated; defendant discharged.
It is ordered that appellant recover of appellee her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the South Euclid Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DYKE, J., and O'DONNELL, J., CONCUR.
 ____________________ JAMES M. PORTER ADMINISTRATIVE JUDGE